EDWARD ZUEST AND LILLIAN ZUEST, PLAINTIFFS-APPELLANTS, v. JOHN INGRA, DEFENDANT-RESPONDENT.

EDWARD ZUEST AND LILLIAN ZUEST, PLAINTIFFS-APPELLANTS, v. SEBASTIAN FARINA, ANTOINETTA FARINA AND THOMAS FARINA, DEFENDANTS-RESPONDENTS.

Argued October 17, 1945—Decided January 31, 1946.

For the plaintiffs-appellants, *Abraham N. Herman*.

For the defendants-respondents, *Louis Zemel* (*Louis J. Miller,* on the brief).

For the Administrator of the Office of Price Administration, Chester Bowles, *John D. Masterson* (*David Weinstein,* of the New York bar, of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This appeal is from a judgment of the Supreme Court which reversed two judgments recovered by the plaintiffs against their landlords in the Orange District Court of Essex County. The plaintiffs were tenants first of the defendant, Ingra, and later of the defendants, Sebastian and Antoinetta Farina. They sued the respective owners because of alleged violation by the latter of the Federal Emergency Price Control Act (section 205-e). The plaintiffs paid a $30 rent each month for an apartment when the amount for rent fixed by the Office of Price Administrator for the accommodation was $27. The federal statute, *supra,* permits the tenant, in these circumstances, to maintain an action for treble the amount of the overcharge or, in the alternative, the sum of $50 for each violation, "which ever is the greater." The District Court Judge found for the plaintiffs. The Supreme Court reversed, holding that there was no direct evidence that the person who received the rent from the plaintiffs, in this instance a rent collector, was the agent of the owner and further that the action, being for a penalty, the general rule of *respondeat superior* in civil cases has no application but that direct authority should be shown which was not the case here. (See *Zuest* v. *Ingra,* 132 *N. J. L.* 37).

An affirmance of this judgment might well be rested, without more, on the fact that there was a complete want of evidence to connect the rent collectors, Thomas Farina and Sam Farina, with the first owner of the property, John Ingra, or with Sebastian Farina, or Antoinetta, his wife, to whom Ingra sold the house. Nothing whatever was supplied in the proof in the case to show the relationship of Thomas Farina to any

of the defendants in either case. There is a like void so far as Sam Farina is concerned.

The question on appeal being identical in each case, the two appeals are consolidated. John Ingra et ux. took title to the property in which plaintiffs were tenants on January 25th, 1943. They conveyed to Sebastian Farina and his wife, Antoinetta, on April 15th, 1943. In the suit against the latter Thomas Farina is named as a defendant. As to Thomas the court found "a verdict of no cause for action." That removed him from the case and consequently from this appeal. But to return to the main question: there having been, as indicated above, not a shred of evidence that the defendants in these two cases, as landlords, had fixed rent in any amount or had received rent from anybody, or had engaged an agent to collect it, that might well end the matter. But what was said in the Supreme Court opinion, *supra,* namely, that the instant cases were actions for penalties, is at odds with other cases out of the Supreme Court, starting with *Beasley* v. *Gottlieb,* 131 *N. J. L.* 117, in which it was held that suits of this character are not penal in essence but rather a private suit for a private wrong and therefore cognizable by the District Courts in this state. Our statute concerning the jurisdiction of a District Court (*R. S.* 2:8–40) provides: "Every action of a civil nature at law, or to recover any penalty imposed or authorized by any law *of this state,* where the debt, balance, penalty, damage or other matter in dispute does not exceed, exclusive of costs, the sum or value of five hundred dollars, shall be cognizable in the district courts of this state." (Italics supplied.)

Now the statute under which this suit is brought is not our statute but one that was passed by the Congress of the United States in 1942. (*Cf.* 50 *U. S. C. A. App.* § 925–e.) We find ourselves unable to agree with the reasoning of the opinion of the Beasley case, *supra.* Rather we read the language of this federal statute and regard the nature of its provisions as a delineation of an action for the recovery of a penalty and not as a compensating action, in the sense of making the injured party whole. To ascertain the purpose of a statute we must consider the nature and essence of its

provisions to give its aim and object controlling effect. Compare *Helwig* v. *United States,* 188 *U. S.* 605, 610-13; 47 *L. Ed.* 614; *People of State of New York* v. *Jersawit,* 263 *U. S.* 493; 68 *L. Ed.* 405; *United States* v. *Childs,* 266 *U. S.* 304; 69 *L. Ed.* 299.

A penalty, generally speaking, in the matter of money, is a sum paid or required to be paid by way of punishment for violation of law. If the federal statute, *supra,* was intended to be compensatory to the injured party, it is plain that the plaintiffs' damage would only be the rather small sum involved in the overcharge plus costs and legal fees for which latter items the statute, *supra,* also permits recovery. A judgment which included the initial loss and expenses would be complete compensation. Here the judgments amounted to $250 plus a counsel fee of $100 or $50 for each case, a total of $350 for an overcharge of $3 per month for five months. That there is no relationship between the amount permitted to be recovered, under the statute, *supra,* and the sum in which the plaintiffs were injured is patent. This feature alone seems to negative the claim that the recovery was compensatory in character. But there is another feature in this Price Control Act indicative of its nature. The federal statute, *supra,* provides that in the event the individual suffering the injury fails to institute an action, under this section of the statute, the Federal Price Administrator may institute such action in behalf of the United States within a year from the date of the occurrence of the violation; and, further, that if the action be instituted by the Administrator the injured party shall thereafter be barred from bringing an action for the same violation. This, by plainest implication, outlines a penalty, not damages as such, because certainly the Price Administrator has suffered no damage because a landlord charges some individual an excessive rent. "Penalty" is defined in 25 *C. J.,* § 72, under Fines, forfeitures, &c., thus: "A penalty is a sum of money of which the law exacts payment by way of punishment for the doing of some act that is prohibited or omitting to do some act that is required to be done." See, also, 36 *C. J. S., Fines,* § 1. The test of a penal law seems to be: Is the wrong sought

to be redressed a wrong to the public or to the individual? *Huntington* v. *Attrill,* 146 *U. S.* 657, 668; 36 *L. Ed.* 1123. To overcharge or profiteer in the face of an Act of the Congress forbidding it, during a time of national peril, is assuredly a public wrong. True it is done against the interests of an individual but that fact does not make it a private wrong. All public wrongs are done at the expense of one or a multitude of individuals.

The section of the federal statute, *supra,* reads as follows:

"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: *Provided, however,* That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the

action, the Administration may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. * * *"

We also find in the appendix of this Emergency Price Control statute (section 901) its purpose stated as follows:

"It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency * * *."

The Congress had the public welfare in mind. The individual citizen was bound to be affected. As instances multiply necessarily the public, in whole or in part, is affected and harmed. It seems crystal clear that the object of the statute is the security and protection of the people generally during a period of crisis. An inspection of the statute as a whole is enlightening. Broad powers are given the Administrator under the heading "enforcement." He may take all lawful means to put down inflation, sustain fixed prices, regulate dealing in certain commodities and enforce the Act in the welfare of the people by aid of the courts, at law on the criminal or civil side or in equity. The fact that he may sue and recover in the name of the United States, against a violator of the statute for the injury done to an individual, when the injured person does not bring action for recovery, unequivocally connotes a penal sanction. Compare *Bowles* v. *Farmers National Bank, &c.,* 147 *Fed. Rep. (2d)* 425.

Wherever the amount to be recovered for a wrong greatly exceeds the actual loss, that circumstance is indicial of penalty rather than compensation. The treble damage feature or the recovery of $50 for each violation, "whichever is the greater," is intended as a deterrent to the individual who debates with himself whether or not to violate the regulation. The fact

that the penalty is not imposed as a fine in a criminal court but rather its recovery is had in a civil action is of no special significance. The nature of the action provided does not define the quality of the exaction. *Hepner* v. *United States,* 213 *U. S.* 103; 53 *L. Ed.* 720; *United States* v. *Zucker,* 161 *U. S.* 475; 40 *L. Ed.* 77. See, also, *Carter* v. *Carter Coal Co.,* 298 *U. S.* 238; 80 *L. Ed.* 1160; see, also, House Report, 1593, 78th Congress, second session, June 3, 1944.

The Congress made no declaration that the recovery in these circumstances, should be considered compensatory or the equivalent of liquidated damages.

· Our conclusion is (1) that the authorized recovery or exaction for violation of the Emergency Price Control is a penalty; (2) as such, an action for its recovery is not cognizable in the District Courts of this state (*Cf.* New Jersey statute, *supra; Koch* v. *Vanderhoof,* 49 *N. J. L.* 619); (3) in an action for a penalty, under this federal act, if the principal be charged for the act of an agent, strict proof of the agency is necessary for recovery.

It therefore follows that *Beasley* v. *Gottlieb, supra,* was incorrectly decided; also *Bendit et al.* v. *H. L. R. Holding Co.,* 131 *N. J. L.* 91; *Wutkowski* v. *Palutes,* 131 *Id.* 441; *Milne, &c.,* v. *Wasserman,* 132 *Id.* 285; *Carmelly* v. *Hanson,* 133 *Id.* 180; *Schwartz* v. *Dell'Osso,* 23 *N. J. Mis. R.* 151, as well as any other case of like nature which has not been brought to our attention which followed the rule of the Beasley case. In so far as they are in conflict with what has been decided here, they are overruled.

The Supreme Court judgment in this case is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, PERSKIE, OLIPHANT, WELLS, RAFFERTY, DILL, FREUND, MCGEEHAN, JJ. 12.

*For reversal*—None.