Lillian M. DENNIS, Petitioner,

v.

DIAL FINANCE & THRIFT COMPANY
et al., Respondents.

No. A–10969.

Supreme Court of Texas.

April 6, 1966.

Connally Lockhart and Sam H. Wilds, Amarillo, Henry T. Ray, Amarillo, for petitioner.

Clayton, Kolander, Moser & Templeton, Amarillo, for respondents.

WALKER, Justice.

As this case reaches us, it is an action for the recovery of money obtained by fraud and exemplary damages. The suit was instituted by Lillian M. Dennis, petitioner, against Dial Finance & Thrift Company and Bernard Justus, respondents. On the basis of the verdict and the undisputed evidence, the trial court rendered judgment in favor of petitioner and against respondents, jointly and severally, for $68.58 actual damages and $3,250.00 exemplary damages. The Court of Civil Appeals concluded that there is no evidence to show malice, and accordingly modified the trial court's judgment to eliminate the recovery of exemplary damages. 392 S.W.2d 717. In our opinion the findings of the jury are supported by the evidence, and the cause will be remanded to the Court of Civil Appeals for a determination of whether the amount of exemplary damages awarded by the jury is excessive.

Dial is engaged in the business of lending money, and Justus is manager of its Amarillo office. On December 7, 1959, Dial advanced $716.65 to petitioner and her husband, Leonard W. Dennis. As evidence of the indebtedness, petitioner and Dennis executed a note to Dial for $900.00, payable in 18 monthly installments of $50.00 each and secured by a chattel mortgage on their furniture. Petitioner and her husband were divorced about four months later. She kept the furniture, but he continued making payments on the note with some degree of regularity.

After the divorce petitioner decided to move to Santa Fe, New Mexico. She told Justus of her plans and received his permission to take the furniture with her, which she did. Petitioner promised at that time to pay the note if her former husband failed to do so. By the middle of July, 1960, Dennis had paid $250.00 on the note but was two installments in arrears. He

went to Dial's office and discussed his situation with Justus. There is a conflict in their testimony regarding this conversation, but the evidence will support the conclusion that Justus agreed to accept $550.00 in full payment and settlement of the note. In any event Dennis paid $550.00 to Dial by a check marked "Acct. in full," and the note was returned to him. Entries were also made on Dial's records showing that the account had been settled for $550.00.

A few days later Justus telephoned petitioner at the place where she worked in Santa Fe. He informed her there was a balance of $100.00 due on the note and inquired whether she could pay the same. Upon being advised that she did not have the funds, he told her to think the matter over, that he would call back in a few days, and that it would be necessary to take possession of the furniture if the balance was not paid. When Justus telephoned her a second time and was again advised that she was unable to pay, he agreed to settle the claim for $68.58. He warned her that the furniture would be picked up if the $68.58 was not paid within two weeks. Later petitioner was telephoned by another representative of Dial, who also threatened to take the furniture if she did not pay. Petitioner sold her deep freeze and used the proceeds to pay the $68.58 to Dial. Entries were then made on Dial's records to show that the account was reopened with an unpaid balance of $68.58, and that such balance was promptly paid.

Only five issues were submitted to the jury, but the fifth is identified in the charge as Special Issue No. 7. By their answers to the five issues, the jury found: (1) that Justus agreed to settle and discharge the note for a payment of $550.00 by Dennis; (2) that after Dennis paid the $550.00, Justus represented to petitioner that the note was unpaid; (3) that such representation was fraudulently, maliciously or wilfully made; (4) that petitioner relied on such representation in making the $68.58 payment; and (7) that petitioner is entitled to recover $3,250.00 as exemplary damages

from Dial. Respondents made no objection to Special Issue No. 3, to the definition of "malicious act" accompanying same, or to the instruction given in connection with Special Issue No. 7.

The Court of Civil Appeals reasoned that while the representation made by respondents was wrong, their conduct cannot be regarded as wanton or malicious. In support of this conclusion, it relied primarily on Ware v. Paxton, Tex.Sup., 359 S.W.2d 897, which was an unreasonable collection efforts case. We held there that the evidence failed to show a campaign of harassment that might properly be characterized as malicious and wanton misconduct, and in the course of the opinion quoted from 25 C.J.S. Damages, § 123(5), as follows:

"The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful."

As pointed out by the Court of Civil Appeals in the present case, respondents did not conduct an extended campaign of harassment and intimidation, there is no evidence of abusive language, and the whole transaction took place within a period of ten days. These circumstances would be material if petitioner were relying on unreasonable collection efforts to show malice, but that is not the basis of her claim. According to the pleadings, she originally sought damages for unreasonable collection efforts, but no issue concerning that ground of recovery was submitted or requested. The case went to the jury as an action to recover money obtained by fraud.

■ It is generally recognized that exemplary damages may properly be awarded when the plaintiff has suffered actual damage as the result of fraud intentionally committed for the purpose of injuring him. See Hubby v. Stokes, 22 Tex. 217; Oliver v. Chapman, 15 Tex. 400; Graham v. Roder, 5 Tex. 141; 24 Am.Jur. Fraud and Deceit, § 222; 37 C.J.S. Fraud § 144. Several other Texas decisions in this general area of the law are cited and reviewed in Briggs v. Rodriguez, Tex.Civ.App., 236 S. W.2d 510 (wr. ref. n. r. e.). The plaintiffs there were induced by false representations to pay the defendant $300.00 they did not owe. Exemplary damages were awarded by the jury, and the defendant contended on appeal that such award was improper because the action for recovery of the $300.00 was not based upon fraud but upon an implied contract to return the money wrongfully obtained. This contention was rejected, and the allowance of exemplary damages was upheld.

■ A person who intentionally misrepresents facts for the purpose of injuring another is guilty of wanton and malicious conduct. The allowance of exemplary damages in cases of wilful and deliberate fraud does not, therefore, do violence to the rule quoted above. Under the evidence in the present case and the findings of the jury, the note was settled and paid in full by petitioner's husband. With knowledge of that fact, respondents set out deliberately to defraud one of their former customers who owed them nothing. When convinced that petitioner was unable to pay the $100.00 originally demanded, they decided to and did take what they could get. We thus have a case of manifest, wilful and flagrant fraud, and in our opinion the facts proven support the finding of the jury in response to Special Issue No. 3.

■ Respondents have directed our attention to a number of their points of error in the Court of Civil Appeals, but only one of them can be considered here. Petitioner waived her claim to exemplary damages against Justus when she went to the jury with no issue submitted or requested concerning the amount of such damages he

should be required to pay. See Van Deventer v. Gulf Production Co., Tex.Civ. App., 41 S.W.2d 1029 (wr. ref.). The judgment of the Court of Civil Appeals is correct, therefore, in so far as it relieved Justus of any liability for exemplary damages.

As we construe respondents' Point No. 21 in the Court of Civil Appeals, it presents the contention that the amount of exemplary damages awarded by the jury is excessive. This question was not reached by the intermediate court, and we have no jurisdiction to decide it. The judgment of the Court of Civil Appeals is accordingly reversed, and the cause is remanded to that court for a consideration of respondents' Point No. 21.