J. W. SINGLETON, III, Appellant,

v.

Charles PENNINGTON, Appellee.

No. 19252.

Court of Civil Appeals of Texas, Dallas.

Dec. 8, 1977.

Rehearing Denied June 7, 1978.

See also, Tex.Civ.App., 568 S.W.2d 382.

Thomas K. Boone, Dalton, Moore, Forde, Joiner & Stollenwerck, Dallas, for appellant.

Gregory L. Ceshker, Ashley & Welch, Dallas, for appellee.

GUITTARD, Chief Justice.

The principal question on this appeal is whether the Deceptive Trade Practices Act, Texas Business and Commerce Code §§ 17.-41 to 17.63 (Vernon Supp.1977), imposes liability for an innocent misrepresentation by a seller of second-hand goods who is not in the business of selling such goods. We conclude that the Act is not limited to sales by persons in the business of selling. We further conclude that the findings of the trial court support plaintiff's recovery under the Act.

The petition alleges that plaintiff bought a boat from defendant in reliance on a false representation that the engine was in good mechanical working condition. Plaintiff claims $500 actual and $1,000 exemplary damages.

After trial without a jury, the judge made findings of fact, which we summarize as follows. Defendant sold plaintiff a used boat, motor, and trailer which defendant had previously acquired for his personal use. Defendant had never sold a boat before and was not in the business of selling boats. Before the sale defendant made oral statements to plaintiff to the effect that the boat, motor, and trailer had just had $500 worth of work on it, making the boat and motor in "excellent condition," "perfect condition," and "just like new." These were statements of material fact rather than merely statements of opinion or puffing. Defendant made the statements with the intent that they would be acted upon by plaintiff. They were false because the gear housing of the motor had been cracked and inadequately repaired. Defendant, however, did not know that the statements were false, and neither did he make them recklessly, because he had not experienced any difficulty with the motor after it had been repaired. Plaintiff relied on defendant's statements and would not otherwise have purchased the boat, motor, and trailer. These statements were misleading and caused an unconscionable result. Within two months after the sale, the gear housing required repairs in the amount of $481.68 because at the time of the sale the boat was in inadequate condition for its intended use.

Before trial, plaintiff and defendant had stipulated to a $500 limitation on exemplary damages, if any should be recovered. The court found that plaintiff was entitled to recover three times the amount of his actual damages of $481.68 under the Deceptive Trade Practices Act, but that under the stipulation his recovery should be limited to the sum of plaintiff's actual damages of $481.68 and exemplary damages to the stipulated limit of $500. Accordingly, the court found that plaintiff was entitled to recover total damages in the amount of $981.68 for violation of the Deceptive Trade Practices Act. The judge concluded that the plaintiff had failed to carry his burden of proving the elements of common-law fraud, but had carried his burden under the Deceptive Trade Practices Act. Accordingly, judgment was rendered for plaintiff for $981.68.

Defendant contends on this appeal that the Act does not apply to a seller who is not in the business of selling. He argues that such a construction is required by § 17.44 of the Act, which provides:

This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

We cannot interpret this provision for liberal construction as sufficient in itself to restrict the scope of the Act to sales in the course of the seller's regular business. In view of other provisions of the Act we conclude that it cannot reasonably be construed as so restricted. Section 17.46(a) declares unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." The terms "trade" and "commerce" are not limited to transactions in the course of the seller's regular business or occupation. On the contrary, § 17.45(6) broadly defines these terms as follows:

(6) "Trade" and "commerce" mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state.

No exemption is provided for sellers who are not in the business of selling, although other exemptions are provided by § 17.49. Section 17.50(a)(1) provides that a consumer may maintain an action if he has been adversely affected by "the use or employment by any person of an act or practice declared to be unlawful by § 17.46." "Person" is defined in § 17.45(3) as "an individual, partnership, corporation, association, or other group, however organized." We find no indication in any of this language of an intent to restrict the Act to sales by persons in the business of selling.

Defendant advances a number of policy reasons for not applying the Act to a person who sells at second hand goods previously acquired for his own use. Persuasive though these reasons may be, we can give them no weight because of the absence of any language in the Act that can reasonably be interpreted as evidencing such intent. Since we find no such language, we hold, reluctantly, that the Act is not so restricted.

By supplemental points appellant attacks the court's findings that the representation in question "caused an unconscionable result." The trial court apparently took the view that this finding brought the case within § 17.50(a)(3), which gives the consumer a right of action if adversely affected by "any unconscionable action or course of action by any person." Defendant argues, in effect, that the court's finding of "unconscionable result" is a legal conclusion and is inconsistent with the fact finding that the defendant did not know that the statements in question were false and did not make those statements recklessly because he had experienced no difficulty with the motor after it had been repaired.

We need not pass on these supplemental points because the findings support another ground of recovery that appellant has not attacked. Besides finding that defendant's representations "caused an unconscionable result," the court also found that they were "misleading," that they were false, that plaintiff relied on them, and that plaintiff would not otherwise have purchased the boat, motor, and trailer. These findings bring the case within § 17.46(a), which declares unlawful "[f]alse, *misleading*, or deceptive practices in the conduct of any trade or commerce" (emphasis added). As we have already pointed out, the terms "trade" and "commerce" are defined in § 17.45(6) to apply to any sale of goods whether or not made in the course of the seller's business. Thus the trial court was correct in holding that plaintiff had met his burden under the Act and would have been entitled to treble damages in the absence of the stipulation limiting recovery of exem-

plary damages to $500. *Cf. Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977) (treble damages mandatory when violation of Act established).

In this connection the question has been raised that decisions construing the Federal Trade Commission Act support defendant's interpretation of the Texas Deceptive Trade Practices Act, in view of § 17.46(c) of the Texas Act which provides:

"It is the intent of the legislature that in construing Subsection (a) of this section the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C.A. 45(a)(1)]."

The provision of the federal act referred to, § 5(a)(1), is as follows:

"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

The decisions construing this provision of the federal act, as we view them, do not support the defendant's contention because § 17.46(c) by its terms applies only to interpretation of § 17.46(a), whereas the main question here is interpretation of the definitions of "trade" and "commerce" in § 17.45(6). The Federal Trade Commission Act has no comparable definition of these terms. The only definition of "commerce" in the Federal Act is that in § 4, 15 U.S. C.A. § 44 (1973), which defines this term as "commerce among the several States," etc. The apparent purpose of this definition is to bring the Act within the powers of Congress under the Interstate Commerce Clause in article I, § 8, of the United States Constitution. Since the power of the Texas legislature over transactions in this state is not derived from the Federal Constitution, the Texas legislature had no occasion to limit the scope of the Texas Act to "commerce" as defined in the Federal Act. If the Texas legislature had intended the terms "trade" and "commerce" in § 17.46(a) to be limited by the scope of the Federal Act it would not have provided its own definitions of those terms in § 17.45(6).

This interpretation does not leave § 17.46(c) altogether without meaning. We conclude that the intent was to refer to interpretations of the Federal Act for guidance in interpreting the phrase "[f]alse, misleading, or deceptive acts or practices" in § 17.46(a). In this connection, it may be noted that the particular provision of the Federal Act referred to, § 5(a)(1), has similar language declaring unlawful "unfair or deceptive acts or practices." Evidently, it is the interpretation of this language by the Federal Trade Commission and federal courts that the Texas legislature has prescribed as a standard for the interpretation of § 17.46(a), along with the twenty illustrative examples of "false, misleading or deceptive practices" listed in § 17.46(b). A similar Massachusetts statute has been given such an interpretation by the highest court of that state. *Commonwealth v. Decotis*, 316 N.E.2d 748, 754 (Mass.1974).

We conclude that since the Federal Act contains no definition of "trade" or "commerce" comparable to the broad definition of those terms in § 17.45(6), our legislature did not intend that this broad definition should be limited by reference to interpretation of the Federal Act in § 17.46(c). Consequently, federal decisions limiting application of the Federal Act to persons engaged in the business of providing goods or services can have no application to this case.

Neither are we persuaded by the reasoning of the Supreme Court of Washington in *Lightfoot v. MacDonald*, 86 Wash.2d 331, 544 P.2d 88 (1976). That court did not hold that the similar statute of that state applies only to a defendant engaged in the business of providing goods or services, but rather that even if he is engaged in such a business (in that case, an attorney providing legal services), there is no violation if the only injury is to the individual plaintiff rather than to the public generally. Defendant in the present case does not urge such an interpretation of the Texas Act, and we consider such an interpretation untenable in view of § 17.50(a), which provides

that a consumer "may maintain an action if he has been adversely affected" by any of the acts or practices declared unlawful by § 17.46, and also in view of § 17.50(b), which prescribes the remedies available to "each consumer who prevails" in such a suit. In our opinion, to hold, as did the Washington court, that none of the acts declared unlawful by § 17.46 afford ground for a private remedy because "no public interest would be served," would be an unwarranted judicial invasion of legislature's primary responsibility to determine the public interest and prescribe remedies for wrongs, both public and private.

We recognize the harshness of our holding that a person who sells second-hand goods previously purchased for his own use is liable for treble damages for an innocent representation. See Comment, "What Hath the Legislature Wrought? A Critique of the Deceptive Trade Practices Act as Amended in 1977," 29 Baylor L.Rev. 526, 531 (1977). Harsh though it may be, it is not so absurd or illogical that the legislature may be presumed not to have intended such a result. The remedy of treble damages is Draconian, even as applied to a person engaged in the business of supplying goods and services, especially if he has not been charged with intentional deception. We have no authority, however, to restrict the statute according to our own notion of the public interest.

Affirmed.

AKIN, J., dissenting.

AKIN, Justice, dissenting.

I cannot agree that the Deceptive Trade Practices Act, Tex.Bus. & Comm.Code Ann., §§ 17.41 to 17.63 (Vernon Supp.1977) was intended to apply to an isolated transaction where the seller was not engaged in the business of selling the goods in question. Instead, the Deceptive Trade Practices Act, in my opinion, applies only to an individual or business organization which, in the ordinary course of business, sells or leases goods or services to consumers. Accordingly, I must respectfully dissent.

The majority opinion relies primarily on the broad language of § 17.46(a) which makes unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." To support their conclusion that the act applies to sellers who are not in the business of selling, they point to § 17.45(6) which defines "trade" and "commerce" broadly so as to include an isolated sale between individuals, neither of whom are engaged in the business of buying and selling goods or services. The majority construes properly the crucial § 17.46(c) of the act specifically pertaining to the legislative intent as to what constitutes false, misleading and deceptive acts under § 17.46(a) but refuses to apply it. Indeed, the majority's decision renders meaningless the requirement that we must look to § 17.46(c) which states:

> It is the *intent of the legislature* that in construing Subsection (a) of the section . . . the courts to the extent possible *will be guided by Subsection (b) of this section* and the *interpretations given by the Federal Trade Commissions and the federal courts to section 5(a)(1) of the Federal Trade Commission Act* [15 U.S. C.A. 45(a)(1).] [Emphasis added]

As I read this language, false, misleading and deceptive acts do not come within the ambit of § 17.46(a) unless they come within § 17.46(b) and unless such acts have been held to be *unfair and deceptive acts under § 5(a)(1)* of the Federal Trade Commission Act. I cannot accept the majority's conclusion that the fact situation in this case falls within § 17.46(a) because the terms "trade" and "commerce" in § 17.45(6) are broadly defined while those terms as used in the Federal Trade Commission Act are to bring the federal act within the Interstate Commerce Clause. The majority then erroneously concludes that since the definition of "trade" and "commerce" is used differently in the federal act, the legislature had no intent to limit the scope of our act to federal decisions determining what deceptive acts are unlawful under § 5(a)(1) of the federal act.

Neither can I agree that the specific acts in § 17.46(b) are merely "illustrative exam-

ples of 'false, misleading or deceptive practices'." Instead, we should look first to § 17.46(b) and then to the federal decisions. Section 17.46(b) enumerates twenty specific false, misleading or deceptive acts, some of which require scienter. Since the factual situation in our case does not fall within the ambit of any specific subdivision of § 17.-46(b), we should, according to the legislative mandate, look to the interpretation given to § 5(a)(1) of the Federal Trade Commission Act, by the federal courts to determine what acts are deceptive trade practices under § 17.46(a).

Section 5(a)(1) is set forth in 15 U.S.C.A. § 45(a)(1) (1964) as follows:

Unfair methods of competition in or affecting commerce, and *unfair or deceptive acts or practices* in or affecting commerce, *are declared unlawful.* [Emphasis added]

The purpose of the federal act prohibiting deceptive trade practices has been held to be the protection of the public rather than the punishment of the wrongdoer. *Federal Trade Commission v. Cinderella Career & Finishing School, Inc.,* 131 U.S.App.D.C. 331, 404 F.2d 1308, 1313 (1968); *Regina Corporation v. Federal Trade Commission,* 322 F.2d 765, 768 (3rd Cir. 1963); *Gimbel Bros., Inc. v. Federal Trade Commission,* 116 F.2d 578, 579 (2nd Cir. 1941); *Progress Tailoring Co. v. Federal Trade Commission,* 153 F.2d 103, 105 (7th Cir. 1946). Thus, the United States Supreme Court has held that § 5(a)(1) of the Federal Deceptive Trade Practices Act does not provide a remedy to private persons for private wrongs and that the "interest of the public" is not satisfied by a showing that purchasers have been deceived. *Federal Trade Commission v. Klesner,* 280 U.S. 19, 25–26, 50 S.Ct. 1, 3–4, 74 L.Ed. 138, 141–42 (1929). The *Klesner* court further held that the public interest must be specific and substantial to justify a complaint under § 5(a)(1) and that no private suit could be brought to stop the unfair conduct because the loss to individuals is too small to warrant such an action. *Id.* at 25–27, 50 S.Ct. at 3.

In addition to the requirement of a substantial public interest as a condition precedent to the applicability of § 5(a)(1) of the Federal Trade Commission Act, federal courts have also limited application of the act to unfair acts of traders in the affected commerce. Thus, where defendants were not engaged in any way in the manufacture, sale, or distribution of cooking utensils of any sort but instead were solely engaged in the sale and distribution of pamphlets, the Third Circuit Court of Appeals held that § 5(a)(1) was limited to acts or practices in the particular business affected by the unfair trade offenses. *Scientific Mfg. Co. v. Federal Trade Commission,* 124 F.2d 640 (3rd Cir. 1941). That court concluded, therefore, that the Federal Trade Commission could not enjoin a defendant from disseminating false and misleading information concerning cooking utensils since the defendants were not interested in the cooking utensil business. The rationale of that case is that a person must be engaged in the business of selling the particular goods or services before the act can be applicable.

Since § 17.46(a) of our act is almost identical with respect to deceptive trade practices as that in § 5(a)(1) of the federal act, and, since the legislature in § 17.46(c) has explicitly directed Texas courts to be governed by federal decisions construing § 5(a)(1) of the federal act, I would hold that § 17.46(a) does not apply where the transaction, as here, is a sale by a seller, who is not engaged in the ordinary course of the business of selling that particular product to the public, but rather is an isolated sale between individuals. In my view, no public interest of the people of this state will be served by making a person who sells secondhand goods previously purchased for his own use liable for treble damages for an innocent misrepresentation. I see no logical reason to treat a one-time seller the same as those who are in the business of selling goods or services to the public, particularly with respect to treble damages and attorney's fees. I do not, however, see the need for a legislative amendment to relieve the harshness of the majority's holding since the legislature intended for state

courts to follow federal decisions interpreting the Federal Trade Commission Act which limits the application of the act to situations where there is a substantial public interest involved. Apparently, since our state act gives an individual a private right of action for deceptive trade practices where the federal act does not, the legislature intended, by the grant of this private remedy, to further implement the act's enforcement for the benefit of the public, similar to the Federal Anti-Trust Act. Certainly, applying the act here, as the majority would do, in no way effectuates the public interest.

The Supreme Court of Washington in a well-reasoned opinion, *Lightfoot v. MacDonald*, 86 Wash.2d 331, 544 P.2d 88 (1976), held that the purpose of the similarly worded Washington Consumer Protection Act was to protect the public from practices injurious to consumers and was not intended to provide an additional remedy for private wrongs which do not affect the public generally. *Id.* at 89. In reaching this conclusion, that court relied on an identical provision in their statute to our § 17.46(c) and, accordingly, looked to federal decisions interpreting § 5(a)(1) of the Federal Trade Commissions Act to determine whether the deceptive act was within the ambit of their statute. Thus, a breach of contract affecting only the parties to the contract whether that breach results from negligence or intent, is not an act affecting the public interest. In accord with the Supreme Court of Washington, I would hold that the Texas Consumer Protection Act is likewise limited to those sellers who are engaged in the business of selling goods and services to the public and does not extend to a seller not so engaged such as the defendant here.

Finally, it has long been held in this state that it is the function of courts to determine the intent of the legislature from the circumstances of its enactment and that intent will prevail even when it apparently seems to conflict with the literal meaning. *Smith v. Smith,* 519 S.W.2d 152, 154 (Tex. Civ.App.—Dallas 1975, writ ref'd) (per Guittard, C. J.). In this well-reasoned opinion, our Chief Justice, after reviewing cases so holding since 1846, stated:

In each of the cited examples, broad statutory language, if interpreted literally, would have covered the particular facts of the case, but the court looked beyond the literal meaning of the words and determined that the true legislative intent was more restricted.

*See also Crosland v. Texas Employment Commission,* 550 S.W.2d 314 (Tex.Civ.App. —Dallas 1977, writ ref'd n. r. e.); *Sanders Corp. v. Haves,* 541 S.W.2d 262 (Tex.Civ. App.—Dallas 1976, no writ). Similarly, here, in my view, the very purpose of the Consumer Protection Act is to protect the public generally rather than to address private wrongs where no public interest is affected. Consequently, even if the legislature had not made its intent explicit in § 17.46(c), I would hold under these authorities, that the Consumer Protection Act does not include isolated sales by an individual not engaged in the business of selling such items so as to avoid a bizarre and harsh result which obviously was not intended by our legislature. Since the trial court found against the plaintiff as to common law fraud, I would reverse the judgment of the trial court and render judgment here for the defendant.

## ON MOTION FOR REHEARING

GUITTARD, Chief Justice.

Defendant now raises for the first time the contention that the Deceptive Trade Practices Act cannot be properly applied to this case because it violates the Fourteenth Amendment to the United States Constitution and article I, sections 13 and 19, of the Texas Constitution. In particular, he argues (1) that section 17.46(a) of the Act is unconstitutionally vague because it has no definition of "false, misleading or deceptive acts or practices," and (2) that the provision for treble damages, particularly for a seller who has not been guilty of bad faith, is an excessive fine or punishment.

Although the members of the court adhere to their respective views on the question presented on original submission as

expressed in the majority and dissenting opinions, and we do not withdraw those opinions, we are unanimous in our decision on the questions raised by the motion for rehearing. We hold that insofar as this case is concerned, the Act is not unconstitutionally vague, and neither does it impose an excessive fine or punishment, because it is reasonably susceptible to the construction that it applies to statements concerning the need for repair service such as those made by defendant on the occasion in question only if made knowingly and with intent to deceive. We give it that construction in order to avoid holding it unconstitutionally vague. Since the trial court found, however, that defendant did not know that the statements were false, we conclude that the court erred in holding that such statements were in violation of the Act. Consequently, we grant the motion for rehearing, set aside our former judgment, reverse the judgment of the trial court, and render judgment that plaintiff take nothing.

### 1. Raising the Constitutional Question

■ Before considering the questions raised by the motion for rehearing, we must determine whether they are properly presented in this case. The record fails to show that any attack on the Deceptive Trade Practices Act was made on constitutional grounds in the trial court. There is a line of cases holding that the unconstitutionality of the statute is an affirmative defense under rule 94 of the Texas Rules of Civil Procedure, and is waived if not pleaded. *Mobile America Sales Corp. v. Rivers,* 556 S.W.2d 378, 382 (Tex.Civ.App.—San Antonio 1977, no writ); *Van Wart v. Van Wart,* 501 S.W.2d 359, 361 (Tex.Civ.App.— Austin 1973, no writ); *City of South Houston v. Sears,* 488 S.W.2d 169, 174 (Tex.Civ. App.—Houston [14th Dist.] 1972, no writ). In this case, we cannot hold that appellant waived the unconstitutionality of the statute by failing to plead it as a defense, since appellee's petition did not mention the Act or plead for any relief under it. Although this omission in the petition has not been raised here, it does tend to explain why the only reference to the Act in the record

before us is in the trial court's findings and conclusions. Moreover, there is another line of cases holding that the validity of a statute of general application is a matter of such public importance as to be proper for decision on appeal, though not assigned as error. *Sanders v. State Department of Public Welfare,* 472 S.W.2d 179, 181 (Tex. Civ.App.—Corpus Christi 1971, writ dism'd); *Houston Lighting & Power Co. v. Jenkins,* 5 S.W.2d 1030, 1032 (Tex.Civ.App.—Austin 1928, no writ); and cf. *McCauley v. Consolidated Underwriters,* 157 Tex. 475, 304 S.W.2d 265 (1957) (discussing scope of "fundamental error" in appellate courts).

■ Of course, appellate courts should not decide questions of constitutional law that have not been properly raised and briefed by the parties. *Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807, 813 (1959). Here, however, the question of constitutionality is raised by appellant in his motion for rehearing and has been briefed by both appellant and appellee. In addition, a number of amicus curiae arguments have been filed in support of the motion for rehearing, and the Attorney General has filed an amicus curiae brief in opposition. These briefs provide thorough discussion of the constitutional questions and the applicable authorities from the points of view of both sides. The validity of the Act is a question of great public importance, since many persons are affected by it in their daily activities, and the lack of case authority on these questions may be explained by the severity of the treble-damage penalty, which few can afford to risk for the purpose of constitutional test. Since the validity of the Act is a matter that goes to the basis of the partial recovery of treble damages, which the trial court allowed, we conclude that the constitutional questions are properly before us.

### 2. Penal Nature of Treble Damages

■ Defendant contends that the Act must be tested by the same standards as penal statutes because of the provision for treble damages in section 17.50(b)(1). Here

the trial court did not actually award treble damages, but rather awarded $500 in addition to actual damages because the parties had stipulated that if any exemplary damages were recovered, they should be limited to $500. This amount, however, was not awarded as exemplary damages, because the trial court found that defendant did not know that the statements were false and did not make them recklessly. The findings show that the trial court considered the award of $500 as a recovery of statutory treble damages partially waived by the stipulation. Consequently, the case must be treated as one in which treble damages were recovered.

Plaintiff argues that recovery of treble damages, like other remedies provided by the Act, is remedial rather than punitive. The purpose of the Act, he says, is to reduce the occasion for legal action by the Attorney General and other public law-enforcement authorities by giving the individual consumer sufficient incentive to take legal action on his own behalf, which would not be worthwhile if recovery were limited to actual damages as recognized in *Woods v. Littleton,* 554 S.W.2d 662, 670 (Tex.1977). Consequently, the argument runs, treble damages may be imposed on any violator of the Act simply as a matter of providing a remedy for the consumer, without any determination of whether the seller's conduct was sufficiently reprehensible to deserve punishment over and above the obligation to respond in compensatory damages for any actual loss, and regardless of whether the Act by its terms gave him reasonable notice at the time of the transaction in question that his conduct was prohibited.

These considerations of expediency do not, in our opinion, satisfy the requirements of due process. From the point of view of the seller, any exaction over and above that necessary to compensate the buyer for his loss is punitive. In this case, the actual loss was $481.68 and the seller was required to pay an additional $500 because of conduct which the trial court found to be entirely innocent of wrongful intent. Treble damages, if not limited here by stipulation, would have amounted to $1,445.04 of which $963.36 would have been over and above the amount of the buyer's loss.

Although this case involves a relatively small amount, the Act is not limited to small purchases. Business consumers, as well as individuals, may claim its benefits, and thus the amount of treble damages recoverable in a particular case is unlimited. Moreover, since the limitation of recovery in class actions to actual damages has now been repealed, and treble damages have been held mandatory in *Woods v. Littleton, supra,* the amount of treble damages in a class action could easily bring financial ruin to a merchant found by a court or jury to have been guilty of a technical, but unwitting violation.[1] These considerations convince us that treble damages is indeed a sufficiently severe exaction as to be within the due process requirement applicable to criminal penalties. *See Wayne County v. Steele,* 121 Neb. 438, 237 N.W. 288, 292 (1931); *Zuest v. Ingra,* 134 N.J.L. 15, 45 A.2d 810, 813 (1946); *Cleveland C.C. & St. L. Ry. Co. v. Wells,* 65 Ohio St. 313, 62 N.E. 332, 334 (1901); *Blake v. Grant,* 65 Wash.2d 410, 397 P.2d 843, 844 (1964); *Gardner v. Lovegren,* 27 Wash. 356, 67 P. 615, 617 (1902); and *cf. Helwig v. United States,* 188 U.S. 605, 23 S.Ct. 427, 47 L.Ed. 614 (1903) (holding imposition of "a further sum" for excess of value of imported goods over declared value to be a "penalty" within jurisdiction of the federal district court, though not expressly so declared). Accordingly, we must determine whether section 17.46(a) of the Act, when considered as a ground for imposition of the penalty of treble damages provided by section 17.50(b)(1), is unconstitutionally vague because the Act contains no definition of "false, misleading or deceptive acts or practices."

1. Since this case arose before the 1977 amendments to the Deceptive Trade Practices Act, we do not consider the effect of section 17.50A(1) (Vernon Supp. 1977), which limits recovery to actual damages and attorney's fees if the defendant "proves that the action complained of resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid the error."

### 3. Certainty Requirement of Due Process

Defendant's contention that the Act is unconstitutionally vague is based on the recognized test of the certainty required of penal statutes stated in *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 as follows:

[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

Defendant cites also *A. B. Small & Co. v. American Sugar Refining Co.,* 267 U.S. 233, 297, 45 S.Ct. 295, 69 L.Ed. 589 (1925), which applies the same test in determining civil liability and holds unconstitutional a statute prohibiting "unjust or unreasonable rates or charges" for necessaries in time of war. Defendant also relies on the rule stated in *Lone Star Gas Co. v. Kelly,* 140 Tex. 15, 165 S.W.2d 446, 448 (1942) as follows:

"When the State . . . promulgates a rule of conduct for the citizen, it must speak in specific and definite terms so that he may clearly understand what is required of him."

Another statement of the same rule by the Supreme Court of the United States is the following from *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952):

A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation.

Likewise, in *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963), the court said:

Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.

Other cases applying this rule include the following: *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Giaccio v. State of Pennsylvania,* 382 U.S. 399, 402, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966); *Lanzetta v. State of New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

### 4. Application of Due Process Requirement to Section 17.46(a)

Applying the same test here, we conclude that at the time of the transaction in question defendant would have had great difficulty in determining whether the penalties of the Act applied to his statements. According to the trial court's findings, defendant stated that the boat and motor "had just had $500 worth of work done on it, making the boat and motor in 'excellent condition,' 'perfect condition,' and 'just like new.'" The court found further that these statements were false, since the repairs were inadequate, but that defendant did not know that they were false and did not make them recklessly because he had not experienced any difficulties with the motor after it had been repaired. A fair construction of these findings is that defendant truthfully told plaintiff that he had spent $500 for repairing the motor, but that he was mistaken in stating that these repairs made it "just like new." The question is, did the language of the Act give defendant fair notice, at the time of the transaction, that his statements concerning the boat and motor would be made at his peril and would subject him to the penalty of treble damages if facts should later be discovered that they were inaccurate?

■ We conclude that section 17.46(a) did not give fair notice that he would be subject to such a penalty. The expression "false, misleading or deceptive acts or practices" in section 17.46(a) is extremely broad. It is similar to the legal and equitable concept of fraud, which is said to be an elusive term, so multiform as to admit to no rules or definitions. *Yamini v. Gentle,* 488 S.W.2d 839, 843 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.); *Kinard v. Sims,* 53 S.W.2d 803, 805 (Tex.Civ.App.—Amarillo 1932, writ ref'd). Yet common-law fraud has limitations not found in the Deceptive Trade

Practices Act. A fraudulent representation is one that the speaker knew to be false, or made recklessly without knowledge of the truth. *Custom Leasing, Inc. v. Texas Bank & Trust Co.,* 516 S.W.2d 138, 143 (Tex. 1974). A statement of opinion, judgment, probability, or expectation is ordinarily not considered actionable fraud unless the speaker himself did not believe it. *Jeffcoat v. Phillips,* 534 S.W.2d 168, 171 (Tex.Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). A promise of future action is not fraud unless the promisor did not intend to perform. *Friedman v. Powell Electric Manufacturing Company, Inc.,* 456 S.W.2d 758, 763 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ); *cf. Stanfield v. O'Boyle,* 462 S.W.2d 270, 272 (Tex. 1971). Nondisclosure is not in itself fraudulent in the absence of special circumstances imposing a duty to disclose. *Moore & Moore Drilling Co. v. White,* 345 S.W.2d 550, 55 (Tex.Civ.App.— Dallas 1961, writ ref'd n.r.e.); *Howard v. County of Nolan,* 319 S.W.2d 947, 950 (Tex. Civ.App.—Eastland 1959, no writ). In order to recover punitive damages at common law, the defrauded party must establish an intentional misrepresentation for the purpose of causing injury. *Dennis v. Dial Finance & Thrift Company,* 401 S.W.2d 803, 805 (Tex. 1966).

It is not clear whether any of these limitations apply to a claim under the Deceptive Trade Practices Act. The concept of "false, misleading, or deceptive acts or practices" in section 17.46(a) may be interpreted as even broader and more nebulous than common-law fraud, as shown by the article by David F. Bragg, *Now We're All Consumers! The 1975 Amendments to the Consumer Protection Act,* 28 Baylor L.Rev. 1, 10–14 (1976). Mr. Bragg, who has filed a brief in this case on behalf of the Attorney General as amicus curiae, explains in his article that one of the purposes of the Act is to extend the scope of a consumer's recovery beyond that allowed for common-law fraud in a number of respects. He points out that the interpretation of the Federal Trade Commission Act by the federal courts, which is expressly adopted in section 17.46(c), extends the concept of "deception" to false

advertising and "puffing" (beyond permissible limits) to representations of opinion as distinguished from representations of fact, to failure to disclose a material fact by telling less than the whole truth, and even to failure to fill orders promptly. He declares that the concept of deception is "fluid, and purposefully so, to enable the courts to enlarge or diminish its meaning according to the needs of the times." *Id.* at 11. Mr. Bragg refers for guidance to the federal decisions interpreting the Federal Trade Commission Act, as expressly authorized by section 17.46(c), and he cites a federal case holding that if a word in an advertisement is ambiguous, and one meaning is false, the word may be deceptive. *Id.* at 13, citing *Carter Products, Inc. v. Federal Trade Commission,* 186 F.2d 821 (7th Cir. 1951). He suggests that the question of whether a particular act or practice is "false, misleading or deceptive" may properly be submitted to a jury, since juries "normally would reflect the community's evolving standards of honesty and fair dealings which the broad language of the phrase is intended to reach."

■■■ Mr. Bragg also points out in his article that the Act does not expressly require intent to deceive, and he mentions the possibility that the courts may require a showing of intent if treble damages are sought. *Id.* at 20. In his opinion, however, since the statute is silent on this requirement, the better approach is to construe section 17.50(b)(1) as a mandatory treble damages provision regardless of intent requiring only that plaintiff prove a violation of the statute in order to recover three times his actual damages. *Id.* at 21. The supreme court has adopted the view that the treble damages penalty, if applicable in the particular case, is mandatory. *Woods v. Littleton,* 554 S.W.2d 662 (Tex. 1977). Thus, Mr. Bragg is correct in saying that if a violation of the Act is found, the trial court has no discretion to require proof of intent to deceive as a condition for recovery of treble damages.

If Mr. Bragg's interpretation of the Act is correct, the phrase "false, misleading, or

deceptive" is not limited to common-law fraud, does not require intent to deceive, and is neither defined in the Act nor fairly capable of definition. So interpreted, the Act provides a choice of statutory remedies in a broad and indeterminate range of cases in which the expectations of consumers are disappointed. The "fluid" character of this concept may be admirably adapted to flexibility of interpretation according to the endless variety of circumstances in which consumers may be victimized, but it raises a serious problem of due process insofar as it allows recovery of treble damages under the standard of reasonable notice set out in *Connally v. General Construction Co., supra,* and the other authorities above cited.

Moreover, we cannot hold that the Act is made certain enough to save its penal provisions by its adoption in section 17.46(c) of the decisions of the federal courts interpreting the Federal Trade Commission Act. Mr. Bragg acknowledges in his article that the federal decisions concerning "deception" have established "no hard and fast rules," and that as a result "attempting to determine whether the facts of a particular case fall within the general prohibition is not an easy task." *Bragg, supra,* at 12. With respect to the "laundry list," section 17.-46(b) expressly provides: "The term 'false, misleading or deceptive acts or practices' includes, but is not limited to," the acts enumerated. Thus, that term is left without definition and embraces unenumerated acts and practices.

5. *Relevance of Intent to Deceive*

■ In the present case, we do not determine whether the Act is impermissibly vague as applied to situations not before us. As applied to the transaction here in question, the problem is whether section 17.46(a) unequivocally puts defendant on notice that he was subject to the penalties of the Act, even if his statements were made in good faith. If the Act were so clear and unequivocal on this point as to leave no room for interpretation, then the Act, though perhaps harsh, would not be subject to a vagueness challenge. Section 17.46(a) is

not that clear, however, as Mr. Bragg himself recognizes. We conclude that it is reasonably subject also to a contrary interpretation in view of the provisions of subsections (b) and (c). Although the expression "false, misleading, or deceptive" in subsection (a) is not defined, section 17.46(c) provides in part:

"It is the intent of the legislature that in construing Subsection (a) of this section . . . the courts to the extent possible will be guided by Subsection (b) of this section . . .." Tex.Laws 1973, Ch. 143, at 324.

Subsection (b) is the "laundry list" of twenty "false, deceptive or misleading acts or practices." Examination of this list reveals that intent to deceive is expressly required in some, but not in others, and thus an uncertainty arises as to whether such intent is required under subsection (a). Subdivision (9) specifies "advertising goods or services *with intent* not to sell them as advertised," and subdivision (10) specifies "advertising goods or services *with intent* not to supply a reasonably expectable public demand" (emphasis added). Subdivision (17) uses the word "fraudulently," which may be taken to apply to representations either made with knowledge of falsity or made recklessly without knowledge of the truth. *See Custom Leasing, Inc. v. Texas Bank & Trust Co.,* 516 S.W.2d 138, 143 (Tex. 1974). More pertinent here is subdivision (13), which specifies "*knowingly* making false or misleading facts concerning the need for parts, replacements, or repair services."

If a seller in the position of the defendant, undertaking to sell a boat and motor on which repair work had been done, were to read the Act and undertake to apply the instruction in subsection (c) that "courts to the extent possible will be guided by subsection (b)," he would logically look over the "laundry list" for the purpose of determining which of the subdivisions of subsection (b) would most nearly fit his circumstances. It seems to us that subdivision (13), which refers to "statements of fact concerning the need for parts, replacement, or repair service" would be the most obviously pertinent. Although subdivision (13) may have

been intended to apply to statements that repair service is needed when it is not, this subdivision by its terms is equally applicable to statements that repair service is not needed when it is. *See Woods v. Littleton,* 554 S.W.2d 662, 665 (Tex. 1977). Subdivision (13) explicitly provides that false or misleading statements concerning the need for repair service are within the Act if made "knowingly." Thus it would have been reasonable for a seller in defendant's position to regard this subdivision as exclusive and to conclude that he was not subjecting himself to the penalties of the Act if he made a good faith statement that he had just had $500 worth of repair work done, making the boat and motor "just like new." At least, he would not be in a position to determine with any degree of certainty that such a statement would be in violation of the Act.

We recognize that the opening paragraph of subsection (b) provides that "the term 'false, misleading, or deceptive acts or practices' includes, but is not limited to" the acts enumerated in the list which follows. This language, however, must be reconciled with the provision in subsection (c) that in construing subsection (a) the courts must be guided by subsection (b) "to the extent possible." A good-faith, but mistaken, statement concerning the need for repair service cannot be considered to be within subsection (a) without ignoring subsection (c) and its reference to subsection (b). Subsection (c) may be reconciled with the "not limited" clause in the opening paragraph of subsection (b) by interpreting that clause as meaning that other acts of a sort not referred to in any of the subdivisions of subsection (b) may still be held to be "false, misleading, or deceptive acts or practices" within subsection (a). For example, if a seller misrepresents the amount of the manufacturer's suggested retail price, such a representation would not fall within any of the acts or practices listed in subsection (b), but it might nevertheless constitute a "false, misleading, or deceptive" act within subsection (a). *See Spradling v. Williams,* Tex., 566 S.W.2d 561 (1978). On the other hand, if the alleged deceptive act in question falls within the type of conduct described in any of the subdivisions of subsection (b), disregarding any requirement of intent therein, then it is reasonable to conclude that the language of that subdivision controls. If that subdivision requires an intent to deceive, then the alleged deceptive act is not in violation of the Act unless the specified intent to deceive is shown. By this construction, full effect and meaning is given to each of the three subdivisions of section 17.46.

■ This construction of section 17.46 is at least reasonable. If a contrary construction is adopted, then in our opinion, the Act does not give reasonable notice to a seller in the position of the defendant that intent to deceive is not required and, consequently, in this respect, the Act would be so vague so as to deny due process under the authorities above cited. We must construe the Act in a manner that would uphold its validity if it is reasonably susceptible to such a construction. *United States v. National Diary Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *State v. Hogg,* 123 Tex. 568, 72 S.W.2d 593 (1934). Consequently, we construe section 17.46 as excluding from the penalties of the Act any "false, misleading, or deceptive" statements concerning the need for repair service unless such statement was made "knowingly." As so construed, section 17.46(a), though possibly capable of constitutional application to other cases, particularly if wrongful intent is shown, does not apply to this case under the findings of the trial court.

In this connection it is pertinent to consider cases in which the Supreme Court of the United States has relied on the requirement of intent or willfulness to uphold, as against due-process attacks, statutes which would otherwise be considered impermissibly vague. In *United States v. National Dairy Products Corp.,* 372 U.S. 29, 33–35, 83 S.Ct. 594, 599, 9 L.Ed.2d 561 (1963), the Robinson-Patman Act, making it a crime to sell goods " 'at unreasonably low prices for the purpose of destroying competition or eliminating a competitor,' " was held to give reasonable notice to potential violators

because the requirement of predatory intent provided further definition of the prohibited conduct. *See also Boyce Motor Lines v. United States,* 342 U.S. 337, 342, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (I.C.C. regulation requiring motor carriers of explosives to avoid "congested thoroughfares"); *Screws v. United States,* 325 U.S. 91, 101–03, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (Civil Rights Act forbidding acts intended to deprive citizens of "constitutional rights"). Under these cases we hold that insofar as section 17.46(a) requires a showing of intent to deceive, it is not unconstitutionally vague.

### 6. *Other Subdivisions of Section 17.46(b)*

▉ In the present case plaintiff has made no allegation or contention that defendant's statements fall within any of the acts or practices listed in section 17.46(b). The Attorney General, as amicus curiae, suggests that they may fall within subdivisions (5) and (7) of subsection(b) and that these subdivisions overlap subdivision (13). Subdivision (5) prohibits a representation that "goods or services have sponsorship, approvals, characteristics, ingredients, uses, benefits or quantities which they do not have." Subdivision (7) prohibits any representation that "goods or services are of a particular standard, quality, or grade . . if they are of another." Neither of these subdivisions expressly requires intent to deceive, as do subdivisions (9), (10), (13), and possibly (17).

We conclude that neither subdivision (5) nor subdivision (7) applies to the present case. The terms in subdivision (5), such as "characteristics" or "benefits," seem to refer to particular characteristics or benefits of the goods when in proper condition or good working order rather than to their need for repair work. Likewise, the terms "standard, quality, or grade" in subdivision

(7) seem to apply to goods available in more than one recognized "standard, quality, or grade," as in the case of milk or meat.[2] Of course, a product of poor quality or low grade may nevertheless be "in perfect condition" or "just like new." Although these statements, when considered by themselves, may be broader than a representation concerning the need for repairs, their context so limits them here because, as the trial court found, defendant's statement was that the boat and motor "had just had $500 worth of work done on it, *making* the boat and motor in 'excellent condition,' 'perfect condition,' and 'just like new' " (emphasis added).

Moreover, even though these statements might be considered broader than a specific statement that the boat and motor needed no repairs, only in this respect were the statements found to be false or misleading. The court found that they were false and misleading because the repairs were inadequate and further repairs were required. Consequently, no violation of the Act can be based on subdivision (5) or subdivision (7).

### 7. *"Unconscionable Result"*

▉ An alternative ground for recovery of treble damages is suggested by the trial court's findings of fact. The court found that the seller's statements were not only "false" and "misleading," but that they "caused an unconscionable result." This finding raises the question of applicability of section 17.50(a)(3) of the Deceptive Trade Practices Act, which provides that a consumer may maintain an action if he has been adversely affected by "any unconscionable action or course of action by any person." If this provision requires intent on the part of the seller to take advantage of the buyer, it has no application here in view of the court's findings that defendant did not know that the statements were

---

**2.** The statement in the present case is similar to the statement in *Spradling v. Williams,* Tex., 566 S.W.2d 561 (1978), that the boat in question was "in the same condition as a new boat except for thirty hours of use of the engine." The court seems to hold that this statement did not fall within any of the subdivisions of sec-

tion 17.46(b), and, therefore, required a finding that it was a "deceptive trade practice," although the Chief Justice expressed doubt as to whether any act not specified in subsection (b) could constitutionally be made the basis of treble damage penalties.

**382**

false and did not make them recklessly. On the other hand, if we should hold that no such intent is required, this holding also would make the Act vulnerable to a due-process attack when considered as a ground for treble damages. Mr. Bragg, in the article above referred to, discusses the lack of definition of the term "any unconscionable action or course of action" and suggests that this question must be decided on a case-by-case basis. *Bragg, supra,* at 16, 17. Thus a seller in the position of the defendant would not have reasonable notice that his conduct is subject to the penalties of the Act. No such problem arises if the term "unconscionable" is construed to imply wrongful intent to take advantage of the buyer. *See United States v. National Dairy Products Corp.,* 372 U.S. 29, 33–35, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), *supra,* and the other similar cases above cited. Consequently, we so construe the Act and hold that subsection 17.50(a)(3) provides no support for the recovery of partial treble damages in this case.

Since we hold that the Deceptive Trade Practices Act does not apply to the facts of this case as found by the trial court, appellant's motion for rehearing is granted, our former judgment is set aside, the judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing.