BROWN & ROOT ET AL. V. D. D. DURLAND.

No. 6414.   Decided July 24, 1935.
(84 S. W., 2d Series, 1073.)

*Wilcox & Graves,* of Georgetown, *Coke R. Stevenson,* of Junction, and *Jerome Sneed, Jr.,* of Austin, for appellants.

Venue is governed by Article 1995, R. S., 1925, and the language of Article 5472b, sec. 2, is not such an express exception to the former article as to indicate a legislative intent to create a further exception to exclusive venue in the county of defendant's residence.   Lasater v. Waits, 95 Texas, 553, 68 S. W., 500; Sullivan v. Westhoff, 38 S. W. (2d) 604; Russell v. Green, 214 S. W., 449.

An interpretation of a statute which would result in making a portion of the statute unconstitutional will not be given to

it when the statute may be upheld in whole by a different construction. Chancey v. Dayton-Goose Creek Ry. Co., 280 S. W., 843; Holman v. Cowden & Sutherland, 158 S. W., 571; Const., Art. 3, sec. 35.

*C. H. Gilmer*, of Rocksprings, *Morriss & Morriss*, of San Antonio, for appellee.

In construing the terms in a statute prescribing that a suit may be brought upon the guaranty bond of a contractor "in any court and in any jurisdiction" the court must give effect to each and every word used when considered and compared together, and the meaning of the word "jurisdiction" which fits into, and is consistent with, the context, must be adopted. Smith v. Texas Co., 53 S. W. (2d) 774; Gulf, C. & S. F. Ry. Co. v. Ft. Worth & R. G. Ry. Co., 86 Texas, 537, 26 S. W., 54; Jones v. Robb, 80 S. W., 395; Doeppenschmidt v. International & G. Ry. Co., 100 Texas, 534, 101 S. W., 1080.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

For the purpose of answering the question certified in this cause, we make the following statement of undisputed facts:

Brown & Root, Inc., apparently had a contract with the State Highway Commission for the construction of a public highway in Edwards County, Texas. Durland asserted a claim against the contractor for which he claimed a lien upon the "moneys, or bonds, or warrants due or to become due to such contractor for improvement," as provided by Article 5472a of the Revised Statutes of 1925. He notified the State Highway Commission of his claim, as provided by Article 5272b, and the Commission evidently retained sufficient amount of the moneys due the contractor to pay said asserted claim. Thereupon the contractor, with the American General Insurance Company as surety, executed such a bond as is contemplated by Article 5472b-1, Acts 41st Legislature, 2nd Called Session, Chapter 78, page 154. Said article reads as follows:

"Sec. 1. That whenever any claim or claims shall be filed attempting to fix a lien, secured or claimed by any instrument filed under the provisions of Chapter 17, of the General Laws of the State of Texas, passed by the Thirty-ninth Legislature in Regular Session, that the contractor or contractors against whom such claim or claims are made, may file a bond with the officials of the State, county, town or municipality whose duty it is to pay the moneys, bonds or warrants to such contractor or contractors. Said bond shall

be double the amount of the claims filed, and shall be payable to the claimant or claimants. It shall be executed by the party filing same as principal, and by a corporate surety authorized under the laws of Texas to execute such bond as surety, and shall be conditioned substantially that the principal and surety will pay to the obligees named, or their assigns, the amount of the claim or claims, or such portion or portions thereof as may be proved to have been liens, under the terms of Chapter 17, General Laws of the State of Texas, passed by the Regular Session of the Thirty-ninth Legislature. The filing of said bond and its approval by the proper official of the State, county, town or municipality, shall release and discharge all liens fixed or attempted to be fixed by the filing of said claim or claims, and the official or officials whose duty it is to pay the moneys, bonds or warrants shall pay or deliver the same to the contractor or contractors or their assigns. Said official shall send by registered mail an exact copy of said bond to all claimants.

"Sec. 2. At any time within six months from the date of filing of said surety bond, the party making or holding such claim or claims may sue upon such bond, but no action shall be brought on such bond after the expiration of such period. One action upon said bond shall not exhaust the remedy thereon, but such obligee or assignee of an obligee named therein may maintain a separate suit thereon in any court and in any jurisdiction. If any claimant or claimants in an action establish the fact that they were entitled to a lien under the provisions of Chapter 17 of the General Laws of the State of Texas, passed at the Regular Session of the Thirty-ninth Legislature, and shall recover judgment for not less than the full amount for which claim was made, the court shall fix a reasonable attorney's fee in favor of the claimant or claimants, which shall be taxed as part of the costs in the case. The bond provided in Section One of this Act shall also be conditioned that the principal and surety will pay all court costs adjudged against the principal in actions brought by claimant or claimants thereon."

After the execution of this bond and the filing of same with the State Highway Commission, the moneys due the contractor were released. Appellee Durland brought this suit in the District Court of Edwards County, Texas, against appellant Brown & Root, Inc., a corporation having its domicile in Travis County, and against the American General Insurance Company, surety, a corporation having its domicile in Harris County.

Suit was upon the bond. We have no information as to the full nature of the claim asserted by appellee, nor the facts upon which he sought to establish a lien against the moneys that were due the contractor and which had been released by the State Highway Commission. The appellants filed pleas of privilege which were overruled. The trial court held that as the suit was upon the bond, and as the Act provided that suit might be maintained thereon "in any court and in any jurisdiction," appellee was entitled to maintain his suit in the District Court of Edwards County.

The Court of Civil Appeals has certified to this court the following question:

"Did the trial court err in overruling the pleas of privilege presented by appellants in the trial court?"

It is obvious that if the language of the statute to the effect that an obligee may maintain a suit "in any court and in any jurisdiction" is given effect according to its literal terms, the result would be entirely unreasonable and out of accord with justice; to such an extent, we think, as to make it void. The quoted provision is therefore manifestly ambiguous. In order to uphold the Act it must be given such a practical and reasonable construction as will make it valid, if possible, and as will accomplish as nearly as possible the intention of the Legislature.

When we look to the purpose of the Act, we readily discern what we believe is the practical effect to be given this provision. The practice of filing claims with the Highway Commission and causing it to withhold moneys due contractors had, prior to the passage of this Act, become so prevalent as to interfere materially with the work of contractors and the making of public improvements. The emergency clause of the Act of 1929 refers to the fact that "a great many claims of liens are filed under this provision which are unjust, and the further reason that contractors under this chapter (meaning Chapter 17 of the Acts of the 39th Legislature) are often times harrassed by such claims, and at the present time do not have adequate means of protecting themselves," created an emergency, etc. The purpose, therefore, of the Act was to release moneys, bonds or warrants due contractors from liens or claims to liens, and to substitute for said moneys, bonds and warrants the security of a bond to protect claimants in the event they establish their liens. It is obvious that the bond does not within itself create a liquidated liability, but only becomes security for the payment of the "amount of the

claim or claims or such portion thereof as may be *proved* to have been liens." The Act does not purport to obviate the necessity of the claimant (obligee in the bond) proving his claim and establishing the fact that it constituted a lien against the moneys, bonds or warrants due the contractor. It is still necessary for the claimant to litigate or establish his claim just as he would have done in order to ultimately enforce his lien against the moneys, bonds or warrants. We think this is a clear inference from the Act as a whole, and particularly from the following provision:

"If any claimant or claimants in an action establish the fact that they were entitled to a lien under the provisions of Chapter 17 of the General Laws of the State of Texas, passed at the Regular Session of the Thirty-ninth Legislature, and shall recover judgment for not less than the full amount for which claim was made, the court shall fix a reasonable attorney's fee in favor of the claimant or claimants, which shall be taxed as part of the costs in the case."

This is precisely what was necessary under the law as it stood before the Act was passed. Article 5472b provides that no public official, when so notified in writing, shall pay all of said moneys, bonds or warrants due said contractor, but shall retain enough of said moneys, bonds or warrants to pay said claim, *"in case it is established by judgment in a court of proper jurisdiction."*

In the present instance, therefore, it is clear that Durland, before a recovery on the bond could be allowed, was required to establish his claim and show that by virtue of it he had a lien on moneys due the contractor under the provisions of Chapter 17 of the General Laws passed at the Regular Session of the 39th Legislature. When he did so, the bond stood as security for payment of the amount of his claim, just as prior thereto the moneys, bonds or warrants stood as such security, and suit could be brought on the bond, if necessary, to recover the amount of the lien as finally established. Obviously, he could join his suit on the bond with his suit to establish his claim and lien; and in fact the reasonable import of the Act is that he should do so.

We, therefore, conclude that the Act of 1929 leaves the matter exactly as it was, so far as the question of venue and jurisdiction is concerned. Under Article 5472b, in order to enforce his lien against the moneys, bonds or warrants, the claimant was required to establish same by "judgment in a court of proper jurisdiction." When he did so, the public of-

ficial having custody of the moneys, bonds or warrants was authorized to deliver same to claimant to the amount of his lien. It is our opinion that under the present Act venue and jurisdiction to establish the claim and lien remain exactly as they were, and this must be done in "a court of proper jurisdiction," determinable from all the facts and circumstances under which the claim has arisen. The action on the bond is purely ancillary to the establishment of the lien, and we think it is maintainable in the court where the claim and lien are established. In other words, we think the suit on a bond is to be brought in the same court where the claimant would have been required to proceed in the event he had sought to establish his claim against the moneys, bonds or warrants. As it is contemplated that the bonds shall run to various obligees or claimants, whose claims and liens may be established in different courts and different places, we think it clear that the clause "in any court and in any jurisdiction" means in any court and in any jurisdiction where claimants may, respectively, have a right to maintain their suits to establish their claims and liens.

The certificate does not show facts sufficient to determine where proper venue lay for the purpose of establishing the claim and lien of Durland, but the Court of Civil Appeals states that "it is conceded by all parties, and it is obvious from the record, that the pleas of privilege should have been sustained, unless appellee is entitled to maintain the action in Edwards County by virtue solely of the quoted provision of the Act mentioned." From this we infer that venue to establish Durland's claim did not lie in Edwards County, and on this assumption we answer the question certified in the affirmative.

Opinion adopted by Supreme Court July 24, 1935.