**Barbara J. SMITH, Appellant,**

v.

**Goldman D. SMITH et ux., Appellees.**

**No. 18475.**

Court of Civil Appeals of Texas, Dallas.

Dec. 30, 1974.

Rehearing Denied Jan. 23, 1975.

David M. Stagner, Nance, Caston, Hefner, Duncan, Green & Stagner, Denison, for appellant.

Roger D. Sanders, Kennedy & Minshew, Sherman, for appellees.

GUITTARD, Justice.

The question is whether a widow who divorced the testator after the execution of his will, but subsequently remarried him, is disqualified as executrix and deprived of all benefits under the will by Tex.Prob. Code Ann. § 69 (Vernon 1956), which provides:

> If the testator is divorced after making a will, all provisions in the will in favor of the testator's spouse so divorced, or appointing such spouse to any fiduciary capacity under the will or with respect to the estate or person of the testator's children, shall be null and void and of no effect.

We hold that the statute does not apply to a surviving spouse who had remarried the testator and was his wife at the time of his death.

The facts are stipulated. Ronald and Barbara Smith married in 1963. In 1968, Ronald executed a will leaving all his property to Barbara and appointing her independent executrix. They were divorced in January 1972, but remarried less than

three months later. In May 1973, Ronald died. Barbara offered the 1968 will for probate and qualified as executrix. His parents then brought this suit in the district court as next friends of his (and her) two minor children, to construe the will. After trial on an agreed statement of facts, the court rendered judgment voiding any devise or bequest in Barbara's favor and also voiding her appointment as executrix and she appeals.

■ The testator's parents contend that the judgment must be affirmed because the language of the statute makes the provisions of the will in favor of his widow void. They insist that the court would be usurping legislative power if it fails to give full effect to the letter of the statute. We disagree. A statute cannot be construed properly in a vacuum. Courts must frequently determine the intent of a statute from the circumstances of its enactment, and that intent will prevail even when it seems to conflict with the literal meaning. This principle has been recognized and applied by the Supreme Court of Texas since the earliest days of statehood in a long line of cases, from which we have selected the following examples.

In Crosby v. Huston, 1 Tex. 203, 238 (1846), the statute provided that no deed, conveyance, or other instrument in writing should take effect as regards third parties until duly proved and presented to the court as required for recording of land titles. Chief Justice Hemphill held that this statute did not apply to creditors or purchasers with actual notice because "where there was actual notice of such prior conveyances, the purpose of the law was fully accomplished, and that the reason of the law ceasing, the law itself became inoperative and its sanctions would not attach."

In Russell v. Farquhar, 55 Tex. 355, 359 (1881), the statute provided that every judgment for title to land should be recorded in the office of the county clerk, and "until so recorded . . . shall not be received in evidence in support of any right claimed by virtue thereof." The Supreme Court held that this statute did not apply in a subsequent suit between parties to the judgment because it was only intended to give notice of the judgment, which was not necessary for the original parties. Chief Justice Moore said:

We deem it unnecessary to cite authorities to show that it is the duty of the court 'to try out the right intendment' of the law, and, when found, to observe and follow it though there may be a conflict between its intent and words.

In Edwards v. Morton, 92 Tex. 152, 153, 46 S.W. 792, 793 (1898), the statute provided that on appeal from a justice court to a county court, the appellant must file a bond in double the amount of the judgment. The Supreme Court held that this statute did not apply to a plaintiff who appealed from a judgment in his favor for an unsatisfactory amount, because the Legislature never intended that a party should give bond to secure a debt payable to himself. The opinion by Justice Brown contains the following classic statement of the principle:

The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of the statute when it leads away from the true intent and purpose of the legislature, and to conclusions inconsistent with the general purpose of the act.

In Brown & Root v. Durland, 126 Tex. 20, 84 S.W.2d 1073, 1075 (1935), the statute provided that a suit on a highway contractor's bond could be brought "in any court and in any jurisdiction." The Supreme Court held that this language applied only when venue was established under provisions of the existing venue statute.

In Kilday v. Germany, 139 Tex. 380, 163 S.W.2d 184, 187 (1942), the statute re-

quired a candidate for nomination for state office to file his request for a place on the ballot with the state party chairman not later than the first Monday in June. The court held that this limitation did not apply to a candidate to fill an unexpired term if the vacancy occurred at such a time as not to give candidates a reasonable opportunity to comply with the law.

In Miers v. Brouse, 153 Tex. 511, 271 S. W.2d 419, 421 (1954), the statute provided that no real-estate salesman should maintain an action for a commission unless he was licensed when the cause of action arose. The Supreme Court held that this statute did not apply to an agent who was licensed when the sale was made, but not when the cause of action for the commission arose on completion of the sale.

Other decisions recognizing and applying the same principle of statutory interpretation include: Calvert v. British-American Oil Producing Co., 397 S.W.2d 839, 842 (Tex.1965); State v. Dyer, 145 Tex. 586, 200 S.W.2d 813, 815 (1947); Wortham v. Walker, 133 Tex. 255, 128 S.W.2d 1138 (1939); Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549, 554 (1937).

In each of the cited examples, broad statutory language, if interpreted literally, would have covered the particular facts of the case, but the court looked beyond the literal meaning of the words and determined that the true legislative intent was more restricted. This practice is consistent with the rule which the Legislature itself has prescribed for interpretation of its civil enactments in Vernon's Tex.Rev.Civ. Stat.Ann. art. 10(6) (1969):

> In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.

When we keep in view "the old law, the evil and the remedy," we have little difficulty here in reaching the conclusion that the Legislature never intended § 69 of the Probate Code to apply to a case in which the testator at the time of his death was married to his principal beneficiary and executrix. The "old law" was that a divorce did not operate to revoke testamentary dispositions in favor of a divorced spouse; consequently, such a former spouse was entitled to take under the will as if no divorce had been granted. Grudziecki v. Starr, 351 S.W.2d 381 (Tex. Civ.App.-Waco 1961, writ ref'd); Merritt v. Merritt, 158 S.W.2d 116 (Tex.Civ.App.-Fort Worth 1941, writ ref'd w.o.m.); Annotation, 18 A.L.R.2d 697, 699 (1951). The "evil" under the old law was obviously that a divorced spouse was no longer a natural object of the testator's bounty, and if the testator died after the divorce, his failure to change his will so as to exclude her was probably not the result of a continuing intention to provide for her. The "remedy" provided by § 69 is that any provision in such a will favoring the former spouse is declared "null and void." This remedy is not appropriate if the testator has remarried his former spouse, because in that case the evil does not exist. Presumably, the remarried spouse is just as much a natural object of the testator's bounty as she was before the divorce, and his failure to change his will so as to exclude her can be assumed to be evidence of his continuing intention to provide for her. In the words of Chief Justice Hemphill in Crosby v. Huston, *supra,* "the reason of the law ceasing, the law itself became inoperative and its sanctions would not attach."

So interpreted, § 69 is consistent with, rather than contrary to, the general policy of the law to give effect to the testator's intentions concerning disposition of his property. The rationale of § 69 is that a provision in favor of a former spouse in a will that remains unchanged after the divorce presents an exceptional situation because the testator probably does not intend that his property should go to his former spouse. If the parties have remarried each other, the situation is no longer exceptional. The general policy of

giving effect to the testator's intention as expressed in his will applies, just as if no divorce had been granted. Since the evident reason for enacting § 69 has no application to this situation, we conclude that the Legislature did not intend for it to apply.

■ This interpretation is in harmony with the rule that a will speaks as of the time of the testator's death. *See* Jones v. Eastham, 36 S.W.2d 538, 541 (Tex.Civ. App.-Galveston 1931, writ ref'd); and *see* Appling v. Jay, 390 S.W.2d 799, 801 (Tex. Civ.App.-Texarkana 1965, writ ref'd n. r. e.). Presumably the Legislature was familiar with this rule when it enacted § 69. That section is evidently designed to apply to a situation in which the testator, at the time of his death, was divorced from the spouse named in his will. It is not reasonable to suppose that the Legislature was concerned otherwise with the marital history of the testator.

Finally, we note that § 69, as we construe it, is in harmony with § 2-508 of the Uniform Probate Code (1969), which provides that a divorce revokes any disposition by will to the former spouse, but further provides: "If provisions are revoked solely by this section, they are revived by testator's remarriage to the former spouse." Although the Uniform Probate Code was drafted after adoption of the Texas Probate Code, we recognize that the National Commissioners on Uniform State Laws, who drafted the Uniform Code, are distinguished legal scholars, and their determination of sound legislative policy confirms our conclusion that the construction we have given § 69 is in accordance with the legislative intent.

The judgment of the trial court is reversed and judgment is here rendered upholding the provisions of the will for the benefit of the widow, Barbara Smith, and upholding her appointment as independent executrix.

Reversed and rendered.