**DENVER–ALBUQUERQUE MOTOR TRANSPORT, INC., Appellant,**

**v.**

**The STATE of Texas and Sherman County, Texas, Appellees.**

No. 8982.

Court of Civil Appeals of Texas, Amarillo.

July 13, 1979.

Rehearing Denied Aug. 8, 1979.

Robinson, Felts, Meyers, Starnes & Latting, Joseph H. Hart, Austin, for appellant.

Dale Paul Summa, County Atty., Stratford, for appellees.

DODSON, Justice.

Defendant Denver-Albuquerque Motor Transport, Inc., a Colorado corporation, appeals from a summary judgment awarding the State of Texas and Sherman County, Texas, delinquent taxes for 1975 and 1976 on defendant's intangible assets under Tex. Rev.Civ.Stat.Ann. art. 7105 (Vernon 1960). Defendant maintains that the Texas Legislature did not intend for the intangible assets tax to be imposed on a wholly interstate carrier; that the tax constitutes an undue burden on interstate commerce in violation of U.S. Const. art. I, § 8; and that an issue of fact exists because the State erroneously and unlawfully calculated its intangible assets for the years in question. We affirm the judgment.

### I.

The summary judgment proof shows, in part, that defendant is a corporation engaged in business as a for-hire carrier of meats, meat by-products, and other products requiring refrigeration. Defendant operates strictly in interstate commerce pursuant to authority granted by the Interstate Commerce Commission. Its interstate authority is registered with the Railroad Commission of Texas, but it does not possess a certificate of convenience and necessity. Defendant operates its vehicles on the public highways of Texas, and according to its report to the State Tax Board dated December 31, 1974, its vehicles traveled 3,454,764 actual miles within the State. The State Comptroller certified that in 1975 and 1976 defendant owned and held properties subject to intangible assets taxes within the State of Texas valued at $111,130 and $133,590, respectively. Assessments of $1,022.40 and $1,229.03 were levied against defendant for these respective years, which amounts are delinquent and have penalty and interest owing thereon.

Article 7105, Tex.Rev.Civ.Stat.Ann. (Vernon 1960), provides, in part, that:

[E]ach 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, doing business wholly or in part within this State, whether incorporated under the laws of this State, or of any other State, territory, or foreign country, *and every other individual, company, corporation, or association doing business of the same character in this State . . .* shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on . . . . The intangible taxable values of said . . . common carrier motor carriers shall be apportioned to the counties in or through which they operate in proportion to the distance in miles of the highways traversed by said carriers in each respective county (emphasis added).

Defendant argues that the language "each 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, doing business wholly or in part within this State" describes an intrastate motor carrier only, and that as an interstate

motor carrier operating under authority granted by the Federal Interstate Commerce Commission it is not amenable to the tax under this language. Under our analysis of the application of the statute to the facts in this case, we deem it unnecessary to determine the correctness of defendant's argument in this regard.

The statute further provides, in the conjunctive, that the tax is imposed on "every other individual, company, corporation, or association doing business of the same character in this State." Defendant contends that this language refers only to non-conforming intrastate motor carriers, *i. e.,* any intrastate motor carrier operating without the convenience and necessity certificate granted by the Railroad Commission. We do not agree.

The legislative intent in enacting the law is the essence of the law. *Gilmore v. Waples,* 108 Tex. 167, 188 S.W. 1037, 1038 (1916). Legislative intent is ascertained from the entire context of the legislation. *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951); *Nichols v. Aldine Independent School District,* 356 S.W.2d 182, 183 (Tex.Civ.App.— Houston 1962, no writ). When the intent is ascertained, then the court has a duty to give full recognition to that intent. *White v. McGill,* 131 Tex. 231, 114 S.W.2d 860, 863 (1938); *McGuire v. City of Dallas,* 141 Tex. 170, 170 S.W.2d 722, 725 (1943). In giving affect to the legislative intent, the courts should give the statute a practical and reasonable construction rather than a literal or thwarting construction. *Brown & Root v. Durland,* 126 Tex. 20, 84 S.W.2d 1073, 1075 (Tex.Comm'n App.1935, opinion adopted).

Construing the statute in its entirety, we are persuaded that the Legislature intended the phrase "every other . . . corporation . . . doing business of the same character in this State" to encompass both intrastate and interstate motor carriers transporting goods for hire over the public highways of the State. These motor carriers have one common characteristic— they use the State's public highway system to conduct business activities within and through the State. We therefore conclude that defendant, a corporation engaging *in* the interstate transportation of goods for hire on the public highways of Texas, is amenable to the tax imposed by the challenged statute.

## II.

Defendant maintains that the intangible assets tax constitutes an undue burden on interstate commerce in violation of U.S. Const. art. I, § 8. Specifically, defendant contends that the tax is strictly local, bears no relationship to its activities in the county, and therefore it is subsidizing the county for programs from which it neither seeks nor receives any services. We do not agree.

Defendant cites general principles from *Colonial Pipeline Co. v. Traigle,* 421 U.S. 100, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975), in support of its position. In *Colonial* however, the Court sustained the validity of a franchise tax levied upon an interstate pipeline company for doing business within the State. The Court reiterated "that the mere act of carrying on business in interstate commerce does not exempt a corporation from state taxation." *Id.* at 108, 95 S.Ct. at 1543. The Court noted that it had, in recent decisions, sustained:

[N]ondiscriminatory, properly apportioned state corporate taxes upon foreign corporations doing an exclusively interstate business when the tax is related to a corporation's local activities and the State has provided benefits and protections for those activities for which it is justified in asking a fair and reasonable return.

*Id.* The Court, summarizing, stated that " '[t]he simple but controlling question is whether the state has given anything for which it can ask return.' " *Id.* at 109, 95 S.Ct. at 1543 *quoting Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267 (1940) and *General Motors Corp. v. Washington,* 377 U.S. 436, 440–41, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964).

In the case at bar, this controlling question is answered affirmatively. The State and its political subdivision, the coun-

ty, provide and maintain the public highway system which defendant traverses in conducting its business activities. Under these circumstances, we conclude that the intangible assets tax does not constitute an undue burden on interstate commerce in violation of the United States Constitution.

### III.

Defendant's final point of error attacks the summary judgment on the ground that genuine questions of fact exist concerning the amount of tax owed for each year in question. Defendant asserts that this fact question arises because the Texas Comptroller of Public Accounts made certain mathematical errors in the application of its formula to calculate defendant's intangible assets for 1975, and under this formula the valuation for 1976 is necessarily erroneous.

The intangible assets tax statute provides that the tax imposed shall be assessed and levied in the manner provided in Chapter 4, Title 122 of the Revised Civil Statutes of Texas (1925). This chapter establishes the State Tax Board and provides, *inter alia,* for the Tax Board to make a preliminary estimate, valuation and apportionment of the true value of the taxpayer's intangible property within this State. Each taxpayer is then notified by registered mail on or before May 31 of each year of the Tax Board's preliminary determination. The taxpayer has fifteen days from the mailing of notice to appear before the Tax Board to introduce evidence and request the Board to change the preliminary valuation and apportionment or to cancel the valuation and apportionment. The Tax Board makes its final valuation and apportionment of the taxpayer's intangible assets by June 20 of each year and certifies this to the tax assessor of the appropriate counties as soon thereafter as is practicable.

In the case at bar, defendant directed a letter to the Texas Comptroller of Public Accounts dated June 3, 1975, which states:

We are in receipt of your Intangible Value Assessment of 111,130 against our company. This valuation has increased approximately 27% over the prior year. May we please be informed as to the reason for this increase as it seems high to us.

On June 13, 1975, the Comptroller of Public Accounts responded as follows:

The enclosed copy of the pencilled work sheet used as a guide in the determination of the intangible valuation assessment notice of which you received in our letter of May 27, 1975, should explain the increase to you. The increased assessment is apparently attributable to the corresponding increase in average net earnings, and subsequent capitalization there of (*sic*). You will also note that this department in order to avoid greater fluctuations in assessments from year to year applies a stabilizing factor which gives twenty percent weight to the current years value and eighty percent to that of the previous year.

Any correspondence in this matter should be directed to the attention of the Ad Valorem-Intangible Tax Division, File Reference 2754, or telephone 512/475–4166.

The summary judgment proof fails to show whether defendant took any further action to appraise the Comptroller or Tax Board of the alleged mathematical errors in calculating the 1975 tax. Nor does the proof show any action by defendant concerning the 1976 tax. Defendant failed to notify the Tax Board of any errors before it certified defendant's final intangible assets valuation on June 20, 1975, and June 17, 1976, respectively.

In essence, defendant's final point of error is a collateral attack on the assessed intangible asset valuation for 1975 and 1976. It has been noted in *Druesdow v. Baker,* 229 S.W. 493, 495 (Tex.Comm'n App. 1921, opinion adopted), *aff'd,* 263 U.S. 137, 44 S.Ct. 460, 68 L.Ed. 212 (1923), that decisions of the Tax Board are quasi-judicial in nature and a collateral attack cannot be justified in the absence of fraud, or something equivalent, such as lack of jurisdiction, an obvious violation of the law, or the adoption of a fundamentally wrong princi-

ple or method which substantially injures the complainant. We are not persuaded that the alleged mathematical errors constitute fraud, a violation of the law, or the adoption of a fundamentally wrong principle or method which would entitle defendant to invoke the collateral attack rule of *Druesdow.* Defendant's final point of error is overruled.

In summary, we overrule defendant's three points of error and affirm the judgment of the trial court.

COUNTISS, J., not participating.