IKARD 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 






NO. 3-93-498-CV






BANK ONE, TEXAS,



 APPELLANT


vs.





FRANK N. IKARD, JR., ATTORNEY AD LITEM FOR THE UNKNOWN


AND ASCERTAINED HEIRS OF ANNA R. FIELD, DECEASED,



 APPELLEE





 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY



NO. 59,518, HONORABLE GUY HERMAN, JUDGE PRESIDING



 






 We must decide whether the Boren amendment applies to the will of a testator who
executed his will before the amendment was enacted, but died after the amendment became
effective. See Tex. Prob. Code Ann. § 59(b) (West Supp. 1994) ("Probate Code"). The trial
court below denied probate of the will, finding that the amendment did not apply and granting
summary judgment on this ground. We will reverse the portion of the trial court's judgment that
denied probate of the will.



BACKGROUND


 Dr. William E. Field, Jr. executed his will in 1987. The will contained a self-proving affidavit. While the witnesses signed both the will and the affidavit, Dr. Field signed
only the self-proving affidavit. (1) Dr. Field died in 1992, and the named executor, Bank One,
offered the will for probate.

 Frank N. Ikard, Jr. contested the will as the attorney ad litem for the unknown and
unascertained heirs of Dr. Field's mother, Anna R. Field. Ikard argued that Dr. Field did not
sign the will. He relied on the Texas Supreme Court's holding that a signature to a self-proving
affidavit does not constitute a signature to the will. See Boren v. Boren, 402 S.W.2d 728, 729
(Tex. 1966). In response, Bank One relied on the "Boren amendment" enacted by the Legislature
in 1991. That amendment overruled the Boren decision by allowing a signature on a self-proving
affidavit to operate as the signature to the will. See Probate Code § 59(b). Bank One argued that
the Boren amendment applied to Dr. Field's will.

 The parties filed cross-motions for summary judgment. Ikard argued that the Boren
amendment applied only to wills executed after the amendment's effective date, September 1,
1991. In a supplemental motion for summary judgment, Ikard further argued that the affidavit
did not substantially conform to the requirements of a self-proving affidavit. See Tex. Prob. Code
Ann. § 59(a) (West Supp. 1994). As proponent for the will, Bank One argued that the amendment
applied retroactively to wills executed before September 1, 1991; in a reply motion, Bank One
argued that the affidavit substantially complied with the requirements of a self-proving affidavit. 
 

 In its judgment, the trial court granted Ikard's motion for summary judgment and
supplemental motion for summary judgment. It denied probate of the will and denied Bank One's
motion for summary judgment, except for granting certain relief regarding attorney fees and
expenses for defending the will. The trial court awarded all parties reasonable and necessary
expenses to be paid out of the estate. (2) Appellant Bank One challenges the trial court's granting
of summary judgment to appellee Ikard in the first point of error, and challenges the denial of its
own summary judgment motion in the second point of error. The only issue before this court is
whether the Boren amendment applies to Dr. Field's will. (3)


 

DISCUSSION


 In Boren v. Boren, the witnesses signed the self-proving affidavit attached to the
will, but did not sign the will itself. As a result, the testator's signature on the will was
unattested, so the will failed to meet the requirements of the Texas Probate Code. The supreme
court held that the signatures to the affidavit could not supply the necessary signatures to the will. 
The court concluded that the self-proving provisions attached to the will were not part of the will
but concerned the matter of its proof only. Boren, 402 S.W.2d at 729. Rather, the execution of
a valid will was a condition precedent to the usefulness of the self-proving provisions of section
59. Id. 

 The supreme court reaffirmed this holding in Wich v. Fleming, where the witnesses
did not sign immediately below the testator's signature to the will but signed instead at the
conclusion of the self-proving affidavit located at the bottom of the same page. 652 S.W.2d 353,
354 (Tex. 1983). Affirming the trial-court's refusal to admit the will to probate, the court stated,
"If the requirements for disposing of property by will are to be altered, it is the province of the
Legislature, not this Court, to effect those changes." Id. at 355. 

 In 1991, the legislature amended section 59. The amendment directly addressed
the holding in Boren:



(b) An affidavit in form and content substantially as provided by Subsection (a)
of this section is a "self-proving affidavit." . . . A signature on a self-proving
affidavit is considered a signature to the will if necessary to prove that the will
was signed by the testator or witnesses, or both, but in that case, the will may
not be considered a self-proved will.




Act of May 24, 1991, 72nd Leg., R.S., ch. 895, § 7, 1991 Tex. Gen. Laws 3062, 3065 (Tex.
Prob. Code Ann. § 59(b)) [hereinafter Act] (emphasis added). Regarding the effective date of the
amendment, the legislature provided, "This Act takes effect September 1, 1991." Act, § 21, at
3070. Dr. Field was alive on the effective date and died the following year. The trial court,
however, granted summary judgment for Ikard, concluding that the Boren amendment did not
apply to the will because the will was executed before its effective date. (4)

 The Act does not state what action triggers the effective date. There are three
possibilities: the execution of the will, the death of the testator, or the admission of the will to
probate. The parties agree that if all three of these actions occurred after September 1, 1991, a
testator's signature on a self-proving affidavit would operate as a signature to the will. In this
case, two of these three actions occurred after the effective date: the testator's death and the
application of the will for probate. We believe that, under these circumstances, the Boren
amendment applies to Dr. Field's will. (5) In determining when an act goes into effect as law, the
legislative intent, manifested from the act as a whole, must govern. Norton v. Kleberg County,
231 S.W.2d 716, 718 (Tex. 1950); see Anderson v. Penix, 161 S.W.2d 455, 459 (Tex. 1942). 
The legislative intent is determined from the language used and the purpose in enacting the law. 
Wilburn v. State, 824 S.W.2d 755, 760 (Tex. App.--Austin 1992, no writ) (citing Ross Amigos Oil
Co. v. State, 138 S.W.2d 798, 800 (Tex. 1940)).

 Both the language and purpose of the Boren amendment are curative. Curative
legislation repairs the consequences of a legal accident or mistake. 2 Norman J. Singer,
Sutherland Statutory Construction § 41.01, at 338 (5th ed. 1993). Its correction makes the law
conform to what was desired either by the legislature or by the parties. See id. The amendment
to section 59 attempts to cure the harsh result reached in Boren v. Boren. With regard to the bill's
elimination of the Boren doctrine, the legislative history of the bill shows that one witness in
support of the amendment, Mr. Alvin Golden, stated in the Senate Hearing where Senate Bill 952
was introduced: "As Senator Green indicated, we are one of only two jurisdictions with this
hypertechnical rule that frustrates the intent of somebody because of a clerical error and this is
a change which we think really needs to be made." (6) 

 Through this amendment, the legislature restored the intent of the testator and
witnesses to execute and witness a will by allowing a signature mistakenly made below the self-proving affidavit to operate as a signature to the will itself. (7) Because this statute is curative, the
general rule is that it be given the most comprehensive and liberal construction possible. Burch
v. City of San Antonio, 518 S.W.2d 540, 544 (Tex. 1975); City of Mason v. West Texas Utils.
Co., 237 S.W.2d 273, 280 (Tex. 1951). In light of this standard, we hold that the amendment
must apply to the wills of testators who die after the effective date of the amendment.

 This construction is in harmony with the rule that the will speaks as of the time of
the testator's death. See Smith v. Smith, 519 S.W.2d 152, 155 (Tex. Civ. App.--Dallas 1974, writ
ref'd) (holding that Probate Code section 69, which revoked all provisions in a will to spouse who
divorces testator, did not apply to surviving spouse who had divorced and remarried the testator
before the time of his death). A will conveys no present right and vests nothing during the life
of the testator. Willis v. Snodgrass, 302 S.W.2d 706, 711 (Tex. Civ. App.--Texarkana 1957, writ
ref'd n.r.e.). During his life, Dr. Field could have revoked or destroyed his will. The will had
no meaning until he died in 1992. Under existing law at the time of his death, a will was not
defective if a signature was mistakenly made only below the self-proving affidavit.

 In this sense, application of the amendment to wills of testators who die after
September 1, 1991, is not necessarily retroactive. A statute is not rendered retroactive merely
because the facts upon which its subsequent action depends are drawn from a time antecedent to
its effective date. See 2 Singer, § 41.01 at 338. Section 59 does dictate the requirements for a
will at its execution--actions which occurred in this case before the effective date. However,
because the will does not speak until the time of the testator's death, the amendment's application
is, at least in one sense, prospective because Dr. Field's will did not become effective until his
death in 1992.

 Ikard argues that the plain language of the Act demonstrates that the legislature did
not intend for the Boren amendment to apply retroactively to instruments executed before
September 1, 1991. Ikard relies on section 20(a) of the Act, which provides:



(a) The changes in law made by sections 1, 3, 4, 6, 9, and 13 of this Act apply
only to the estates of persons who die on or after the effective date of this Act. 
An estate of a person who dies before the effective date of this Act is covered
by the law as it existed when the person died, and the former law is continued
in effect for that purpose.



Act, § 20(a), at 3070. The Boren amendment, section 7 of the Act, is not included in section
20(a). Ikard argues that the omission of section 7 from this provision indicates that the legislature
did not intend for the Boren amendment to apply to Dr. Field's will. We disagree.

 First, the language of section 20(a) is restrictive, rather than expansive. It provides
that the changes in law "apply only" to estates of persons who die on or after the effective date
of the Act. Thus section 20(a) appears to limit its retroactivity for the six amendments listed. In
light of this restrictive language, the omission of section 7 does not indicate a legislative intent
that the Boren amendment must apply only to documents executed after the effective date. 
Second, the silence regarding the application of section 7 must be construed in light of the
language and purpose of the amendment. (8) We believe the amendment's curative language and
purpose to effectuate the intent of the parties to a will's execution overrides any conceivable
implication by section 20(a) that only those six sections can apply to the estates of testators who
die after the effective amendment. Finally, while under the general rule there is a presumption
that acts are intended to operate prospectively, Ex parte Abell, 613 S.W.2d 255, 258 (Tex. 1981),
in light of our view that the application to Dr. Field is in some sense a prospective one--because
the will does not speak until the testator's death--our construction remains in line with this
presumption.

 The law favors testate over intestate passage of property. Lane v. Sherrill, 614
S.W.2d 619, 623 (Tex. Civ. App.--Austin 1981, no writ). Applying the amendment to the will
of a testator who dies after the effective date follows the cardinal rule of effectuating the intent
of the testator. As reflected in the parties' stipulations, no one disputes that Dr. Field intended
to execute his last will. Application of the amendment validates his expectations at the time of
the will's execution.

 We now address the trial court's alternate conclusion that the affidavit is not a self-proving one. We reject this conclusion and hold that Dr. Field's affidavit substantially complied
with the form and content of the self-proving affidavit in section 59(a). The affidavit to Dr.
Field's will used the exact language of section 59(a), but failed to include a single clause. The
following is the affidavit in the will, with the omitted language from section 59(a) placed in
brackets:





 Before me, the undersigned authority, on this day personally appeared
WILLIAM E. FIELD, JR., MITZI I. DREHER, and MARY P. TAYLOR, known
to me to be the Testator and the witnesses, respectively, whose names are
subscribed to the annexed or foregoing instrument in their respective capacities,
and, all of said persons being by me duly sworn, the Testator, WILLIAM E.
FIELD, JR., declared to me and to the said witnesses in my presence that said
instrument is his Last Will, and that he had willingly made and executed it as his
free act and deed for the purposes therein expressed; and the said witnesses, each
on his oath stated to me, in the presence and hearing of the said Testator, that the
said Testator had declared to them [that said instrument is his last will and
testament, and] that he executed the same as such and wanted each of them to sign
it as a witness; and upon their oaths each witness stated further that they did sign
the same as witnesses in the presence of the said Testator and at his request; that
he at that time was eighteen (18) years of age or over and was of sound mind; and
that each of said witnesses was then at least fourteen (14) years of age.



An affidavit in form and content substantially as provided by section 59(a) is a "self-proving
affidavit." Probate Code § 59(b). The affidavit in Dr. Field's will tracks the language in section
59(a) practically word for word, save for the omitted clause in brackets above. See Probate Code
§ 59(a). This clause involves part of the witnesses' statement to the notary of what the testator
has declared to them. With the omission, the testator declares that "he executed the same as
such." Within the context of the paragraph the effect is the same: rather than the testator
declaring to the witnesses, "this is my will and I executed it as such," he declares, "I executed this
instrument as my will." The latter declaration is merely a more concise version of the former. 
Moreover, in the context of the entire affidavit, the testator's declaration to the witnesses that he
"executed the same as such" reasonably can refer to the testator's earlier declaration in the
paragraph, providing an express declaration that the instrument is his will. We hold that the
affidavit satisfies the requirements of a self-proving affidavit under section 59(a).





CONCLUSION


 We sustain Bank One's first point of error. Because the parties have stipulated that
the will is valid in all other respects, we sustain Bank One's second point of error and hold that
the trial court erred in denying Bank One's motion for summary judgment to have the will
probated. (9) We reverse the portion of the trial court's judgment that: (1) denies probate of the
will; (2) grants the ad litem's motion for summary judgment and supplemental motion for
summary judgment; and (3) denies Bank One's motion for summary judgment. We render
judgment that the will be admitted to probate. The remainder of the judgment is affirmed.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Reversed and Rendered in Part; Affirmed in Part

Filed: June 29, 1994

Publish


 
1.   The will did not provide a line for the testator to sign his signature directly beneath
the attestation clause; instead, a signature line was provided beneath the self-proving
affidavit on the same page.
2.   The trial court awarded Bank One $35,915.58 as reasonable and necessary fees for
defending and offering the will to probate in good faith. It also awarded reasonable and
necessary fees to the named beneficiaries, Jerry Marvin Beal and the Humane Society of
New Braunfels, Inc., in the amount of $10,421.04 and $585, respectively. Finally, the
trial court awarded $18,769.82 to the ad litem as reasonable and necessary fees and
expenses. 
3.   In exhibit one, the parties stipulated that, except for Dr. Field's signature, the will
has been validly executed in all other respects. Stipulation number five provides: "The
Decedent executed the Purported Will with the formalities and solemnities and under the
circumstances required by law to make it a valid will, except that the Decedent signed the
Purported Will only on page 3, on what is commonly known as the self-proving affidavit. 
The parties in this Cause dispute whether as a matter of law this constitutes proper
signature of the Purported Will by the Decedent." Thus, if the Boren amendment applies,
the will may be admitted to probate.
4.   In granting summary judgment, the trial court also concluded that the amendment
did not apply on an alternate ground: even if the Boren amendment governed the will, the
court concluded that the affidavit did not meet the requirements of a "self-proving" affidavit
under section 59(a); therefore, Dr. Field's signature was not a "signature on a self-proving
affidavit," and the saving provision in the Boren amendment was inapplicable. We disagree
and will fully address this additional ground later in the opinion. 
5.   Because Dr. Field died after the effective date, we do not address whether the
amendment applies to a case where both the will's execution and the testator's death
occurred before the amendment's enactment, but the application for probate was made
after the effective date.
6.   Bank One provided this testimony in a sworn written transcript made from the tape
recording of the hearing before the Senate Jurisprudence Committee on April 23, 1991. 
The transcript was attached to Bank One's motion for summary judgment.
7.   This legislative intent to uphold the intentions of parties to an agreement has also
been reflected in the application of constitutional amendments involving community
property. See Beck v. Beck, 814 S.W.2d 745, 748 (Tex. 1991), cert. denied, 112 S.Ct. 1266
(1992) (holding that one purpose of 1980 constitutional amendment validating pre-marital
agreements under Family Code section 5.41 was to uphold intentions of spouses who entered
into pre-marital agreements before 1980); Haynes v. Stripling, 812 S.W.2d 397, 399 (Tex.
App.--Eastland 1991, no writ) (holding that 1987 constitutional amendment--allowing parties to
make their community property become the property of the surviving spouse on the death of
the other without partition--applied retroactively to written agreement executed before
amendment). 
8.   In addition to section 7, the Act is silent as to the application of the effective date to
eleven of the nineteen amendments.
9.   In addition to the parties' stipulations, Bank One's motion for summary judgment
included numerous affidavits that proved up the will, including the affidavits of the two
witnesses and the notary who participated in the will's execution.