BANK ONE, TEXAS, Appellant,

v.

Frank N. IKARD, Jr., Attorney Ad Litem for the Unknown and Ascertained Heirs of Anna R. Field, Deceased, Appellee.

No. 3–93–498–CV.

Court of Appeals of Texas, Austin.

June 29, 1994.

Rehearing Overruled Nov. 16, 1994.

Hugh Lowe, Osborne, Lowe, Helman & Smith, L.L.P., Austin, for appellant.

Frank N. Ikard, Jr., Ikard & Golden, P.C., Austin, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

CARROLL, Chief Justice.

We must decide whether the *Boren* amendment applies to the will of a testator who executed his will before the amendment was enacted, but died after the amendment became effective. *See* Tex.Prob.Code Ann. § 59(b) (West Supp.1994) ("Probate Code"). The trial court below denied probate of the will, finding that the amendment did not apply and granting summary judgment on this ground. We will reverse the portion of the trial court's judgment that denied probate of the will.

### BACKGROUND

Dr. William E. Field, Jr. executed his will in 1987. The will contained a self-proving affidavit. While the witnesses signed both the will and the affidavit, Dr. Field signed

only the self-proving affidavit.[1] Dr. Field died in 1992, and the named executor, Bank One, offered the will for probate.

Frank N. Ikard, Jr. contested the will as the attorney ad litem for the unknown and unascertained heirs of Dr. Field's mother, Anna R. Field. Ikard argued that Dr. Field did not sign the will. He relied on the Texas Supreme Court's holding that a signature to a self-proving affidavit does not constitute a signature to the will. *See Boren v. Boren,* 402 S.W.2d 728, 729 (Tex.1966). In response, Bank One relied on the *"Boren* amendment" enacted by the Legislature in 1991. That amendment overruled the *Boren* decision by allowing a signature on a self-proving affidavit to operate as the signature to the will. *See* Probate Code § 59(b). Bank One argued that the *Boren* amendment applied to Dr. Field's will.

The parties filed cross-motions for summary judgment. Ikard argued that the *Boren* amendment applied only to wills executed after the amendment's effective date, September 1, 1991. In a supplemental motion for summary judgment, Ikard further argued that the affidavit did not substantially conform to the requirements of a self-proving affidavit. *See* Tex.Prob.Code Ann. § 59(a) (West Supp.1994). As proponent for the will, Bank One argued that the amendment applied retroactively to wills executed before September 1, 1991; in a reply motion, Bank One argued that the affidavit substantially complied with the requirements of a self-proving affidavit.

In its judgment, the trial court granted Ikard's motion for summary judgment and supplemental motion for summary judgment.

It denied probate of the will and denied Bank One's motion for summary judgment, except for granting certain relief regarding attorney fees and expenses for defending the will. The trial court awarded all parties reasonable and necessary expenses to be paid out of the estate.[2] Appellant Bank One challenges the trial court's granting of summary judgment to appellee Ikard in the first point of error, and challenges the denial of its own summary judgment motion in the second point of error. The only issue before this court is whether the *Boren* amendment applies to Dr. Field's will.[3]

## DISCUSSION

In *Boren v. Boren,* the witnesses signed the self-proving affidavit attached to the will, but did not sign the will itself. As a result, the testator's signature on the will was unattested, so the will failed to meet the requirements of the Texas Probate Code. The supreme court held that the signatures to the affidavit could not supply the necessary signatures to the will. The court concluded that the self-proving provisions attached to the will were not part of the will but concerned the matter of its proof only. *Boren,* 402 S.W.2d at 729. Rather, the execution of a valid will was a condition precedent to the usefulness of the self-proving provisions of section 59. *Id.*

The supreme court reaffirmed this holding in *Wich v. Fleming,* where the witnesses did not sign immediately below the testator's signature to the will but signed instead at the conclusion of the self-proving affidavit located at the bottom of the same page. 652

1. The will did not provide a line for the testator to sign his signature directly beneath the attestation clause; instead, a signature line was provided beneath the self-proving affidavit on the same page.

2. The trial court awarded Bank One $35,915.58 as reasonable and necessary fees for defending and offering the will to probate in good faith. It also awarded reasonable and necessary fees to the named beneficiaries, Jerry Marvin Beal and the Humane Society of New Braunfels, Inc., in the amount of $10,421.04 and $585, respectively. Finally, the trial court awarded $18,769.82 to the ad litem as reasonable and necessary fees and expenses.

3. In exhibit one, the parties stipulated that, except for Dr. Field's signature, the will has been validly executed in all other respects. Stipulation number five provides: "The Decedent executed the Purported Will with the formalities and solemnities and under the circumstances required by law to make it a valid will, except that the Decedent signed the Purported Will only on page 3, on what is commonly known as the self-proving affidavit. The parties in this Cause dispute whether as a matter of law this constitutes proper signature of the Purported Will by the Decedent." Thus, if the *Boren* amendment applies, the will may be admitted to probate.

S.W.2d 353, 354 (Tex.1983). Affirming the trial-court's refusal to admit the will to probate, the court stated, "If the requirements for disposing of property by will are to be altered, it is the province of the Legislature, not this Court, to effect those changes." *Id.* at 355.

In 1991, the legislature amended section 59. The amendment directly addressed the holding in *Boren:*

> (b) An affidavit in form and content substantially as provided by Subsection (a) of this section is a "self-proving affidavit." ... *A signature on a self-proving affidavit is considered a signature to the will if necessary to prove that the will was signed by the testator or witnesses, or both, but in that case, the will may not be considered a self-proved will.*

Act of May 24, 1991, 72nd Leg., R.S., ch. 895, § 7, 1991 Tex.Gen.Laws 3062, 3065 (Tex. Prob.Code Ann. § 59(b)) [hereinafter Act] (emphasis added). Regarding the effective date of the amendment, the legislature provided, "This Act takes effect September 1, 1991." Act, § 21, at 3070. Dr. Field was alive on the effective date and died the following year. The trial court, however, granted summary judgment for Ikard, concluding that the *Boren* amendment did not apply to the will because the will was executed before its effective date.[4]

■ The Act does not state what action triggers the effective date. There are three possibilities: the execution of the will, the death of the testator, or the admission of the will to probate. The parties agree that if all three of these actions occurred after September 1, 1991, a testator's signature on a self-proving affidavit would operate as a signature to the will. In this case, two of these three actions occurred after the effective date: the testator's death and the application of the will for probate. We believe that, under these circumstances, the *Boren* amendment applies to Dr. Field's will.[5] In determining when an act goes into effect as law, the legislative intent, manifested from the act as a whole, must govern. *Norton v. Kleberg County,* 231 S.W.2d 716, 718 (Tex. 1950); *see Anderson v. Penix,* 161 S.W.2d 455, 459 (Tex.1942). The legislative intent is determined from the language used and the purpose in enacting the law. *Wilburn v. State,* 824 S.W.2d 755, 760 (Tex.App.—Austin 1992, no writ) (citing *Ross Amigos Oil Co. v. State,* 138 S.W.2d 798, 800 (Tex.1940)).

■ Both the language and purpose of the *Boren* amendment are curative. Curative legislation repairs the consequences of a legal accident or mistake. 2 Norman J. Singer, *Sutherland Statutory Construction* § 41.01, at 338 (5th ed. 1993). Its correction makes the law conform to what was desired either by the legislature or by the parties. *See id.* The amendment to section 59 attempts to cure the harsh result reached in *Boren v. Boren.* With regard to the bill's elimination of the *Boren* doctrine, the legislative history of the bill shows that one witness in support of the amendment, Mr. Alvin Golden, stated in the Senate Hearing where Senate Bill 952 was introduced: "As Senator Green indicated, we are one of only two jurisdictions with this hypertechnical rule that frustrates the intent of somebody because of a clerical error and this is a change which we think really needs to be made." [6]

■ Through this amendment, the legislature restored the intent of the testator and witnesses to execute and witness a will by

---

4. In granting summary judgment, the trial court also concluded that the amendment did not apply on an alternate ground: even if the *Boren* amendment governed the will, the court concluded that the affidavit did not meet the requirements of a "self-proving" affidavit under section 59(a); therefore, Dr. Field's signature was not a "signature on a self-proving affidavit," and the saving provision in the *Boren* amendment was inapplicable. We disagree and will fully address this additional ground later in the opinion.

5. Because Dr. Field died after the effective date, we do not address whether the amendment applies to a case where both the will's execution and the testator's death occurred before the amendment's enactment, but the application for probate was made after the effective date.

6. Bank One provided this testimony in a sworn written transcript made from the tape recording of the hearing before the Senate Jurisprudence Committee on April 23, 1991. The transcript was attached to Bank One's motion for summary judgment.

allowing a signature mistakenly made below the self-proving affidavit to operate as a signature to the will itself.[7] Because this statute is curative, the general rule is that it be given the most comprehensive and liberal construction possible. *Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex.1975); *City of Mason v. West Texas Utils. Co.*, 237 S.W.2d 273, 280 (Tex.1951). In light of this standard, we hold that the amendment must apply to the wills of testators who die after the effective date of the amendment.

This construction is in harmony with the rule that the will speaks as of the time of the testator's death. *See Smith v. Smith*, 519 S.W.2d 152, 155 (Tex.Civ.App.—Dallas 1974, writ ref'd) (holding that Probate Code section 69, which revoked all provisions in a will to spouse who divorces testator, did not apply to surviving spouse who had divorced and remarried the testator before the time of his death). A will conveys no present right and vests nothing during the life of the testator. *Willis v. Snodgrass*, 302 S.W.2d 706, 711 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.). During his life, Dr. Field could have revoked or destroyed his will. The will had no meaning until he died in 1992. Under existing law at the time of his death, a will was not defective if a signature was mistakenly made only below the self-proving affidavit.

In this sense, application of the amendment to wills of testators who die after September 1, 1991, is not necessarily retroactive. A statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date. *See 2 Singer*, § 41.01 at 338. Section 59 does dictate the requirements for a will at its execution—actions which occurred in this case before the

effective date. However, because the will does not speak until the time of the testator's death, the amendment's application is, at least in one sense, prospective because Dr. Field's will did not become effective until his death in 1992.

Ikard argues that the plain language of the Act demonstrates that the legislature did not intend for the *Boren* amendment to apply retroactively to instruments executed before September 1, 1991. Ikard relies on section 20(a) of the Act, which provides:

(a) The changes in law made by sections 1, 3, 4, 6, 9, and 13 of this Act apply only to the estates of persons who die on or after the effective date of this Act. An estate of a person who dies before the effective date of this Act is covered by the law as it existed when the person died, and the former law is continued in effect for that purpose.

Act, § 20(a), at 3070. The *Boren* amendment, section 7 of the Act, is not included in section 20(a). Ikard argues that the omission of section 7 from this provision indicates that the legislature did not intend for the *Boren* amendment to apply to Dr. Field's will. We disagree.

First, the language of section 20(a) is restrictive, rather than expansive. It provides that the changes in law "apply only" to estates of persons who die on or after the effective date of the Act. Thus section 20(a) appears to *limit* its retroactivity for the six amendments listed. In light of this restrictive language, the omission of section 7 does not indicate a legislative intent that the *Boren* amendment must apply only to documents executed after the effective date. Second, the silence regarding the application of section 7 must be construed in light of the language and purpose of the amendment.[8]

---

7. This legislative intent to uphold the intentions of parties to an agreement has also been reflected in the application of constitutional amendments involving community property. *See Beck v. Beck*, 814 S.W.2d 745, 748 (Tex.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1266, 117 L.Ed.2d 494 (1992) (holding that one purpose of 1980 constitutional amendment validating premarital agreements under Family Code section 5.41 was to uphold intentions of spouses who entered into pre-marital agreements before 1980); *Haynes v. Stripling*, 812 S.W.2d 397, 399

(Tex.App.—Eastland 1991, no writ) (holding that 1987 constitutional amendment—allowing parties to make their community property become the property of the surviving spouse on the death of the other without partition—applied retroactively to written agreement executed before amendment).

8. In addition to section 7, the Act is silent as to the application of the effective date to eleven of the nineteen amendments.

We believe the amendment's curative language and purpose to effectuate the intent of the parties to a will's execution overrides any conceivable implication by section 20(a) that only those six sections can apply to the estates of testators who die after the effective amendment. Finally, while under the general rule there is a presumption that acts are intended to operate prospectively, *Ex parte Abell,* 613 S.W.2d 255, 258 (Tex.1981), in light of our view that the application to Dr. Field is in some sense a prospective one—because the will does not speak until the testator's death—our construction remains in line with this presumption.

■ The law favors testate over intestate passage of property. *Lane v. Sherrill,* 614 S.W.2d 619, 623 (Tex.Civ.App.—Austin 1981, no writ). Applying the amendment to the will of a testator who dies after the effective date follows the cardinal rule of effectuating the intent of the testator. As reflected in the parties' stipulations, no one disputes that Dr. Field intended to execute his last will. Application of the amendment validates his expectations at the time of the will's execution.

■ We now address the trial court's alternate conclusion that the affidavit is not a self-proving one. We reject this conclusion and hold that Dr. Field's affidavit substantially complied with the form and content of the self-proving affidavit in section 59(a). The affidavit to Dr. Field's will used the exact language of section 59(a), but failed to include a single clause. The following is the affidavit in the will, with the omitted language from section 59(a) placed in brackets:

Before me, the undersigned authority, on this day personally appeared WILLIAM E. FIELD, JR., MITZI I. DREHER, and MARY P. TAYLOR, known to me to be the Testator and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being by me duly sworn, the Testator, WILLIAM E. FIELD, JR., declared to me and to the said witnesses in my presence that said instrument is his Last Will, and that he had willingly made and executed it as his free act and deed for the purposes therein expressed; and the said witnesses, each on his oath stated to me, in the presence and hearing of the said Testator, that the said Testator had declared to them [*that said instrument is his last will and testament, and*] that he executed the same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the said Testator and at his request; that he at that time was eighteen (18) years of age or over and was of sound mind; and that each of said witnesses was then at least fourteen (14) years of age.

An affidavit in form and content *substantially* as provided by section 59(a) is a "self-proving affidavit." Probate Code § 59(b). The affidavit in Dr. Field's will tracks the language in section 59(a) practically word for word, save for the omitted clause in brackets above. *See* Probate Code § 59(a). This clause involves part of the witnesses' statement to the notary of what the testator has declared to them. With the omission, the testator declares that "he executed the same as such." Within the context of the paragraph the effect is the same: rather than the testator declaring to the witnesses, "this is my will and I executed it as such," he declares, "I executed this instrument as my will." The latter declaration is merely a more concise version of the former. Moreover, in the context of the entire affidavit, the testator's declaration to the witnesses that he "executed the same as such" reasonably can refer to the testator's earlier declaration in the paragraph, providing an express declaration that the instrument is his will. We hold that the affidavit satisfies the requirements of a self-proving affidavit under section 59(a).

## CONCLUSION

We sustain Bank One's first point of error. Because the parties have stipulated that the will is valid in all other respects, we sustain Bank One's second point of error and hold that the trial court erred in denying Bank One's motion for summary judgment to have the will probated.[9] We reverse the portion

---

9. In addition to the parties' stipulations, Bank One's motion for summary judgment included

of the trial court's judgment that: (1) denies probate of the will; (2) grants the ad litem's motion for summary judgment and supplemental motion for summary judgment; and (3) denies Bank One's motion for summary judgment. We render judgment that the will be admitted to probate. The remainder of the judgment is affirmed.

numerous affidavits that proved up the will, including the affidavits of the two witnesses and

the notary who participated in the will's execution.